IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **INNOVA HOSPITAL SAN ANTONIO, L.P. et al.,** | § § § | |
| | § | |
| **Plaintiffs,** | § § | |
| | § | **Civil Action No. 3:12-cv-1607-O** |
| **v.** | § § | |
| **BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC. et al.,** | § § § | |
| | § | |
| **Defendants.** | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Health Care Service Corporation's Motion to Dismiss All Claims Concerning the Service Benefit Plan and Brief in Support (ECF No. 55), filed October 1, 2012; Plaintiffs' Response in Opposition and Brief in Support (ECF Nos. 77-78), filed October 22, 2012; and Defendant's Reply (ECF No. 101), filed November 5, 2012. Having considered the motion and the applicable law, the Court finds that Defendant's Motion should be and is hereby **GRANTED.**

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs Innova Hospital San Antonio, LP and Victory Medical Center Houston, L.P. (collectively "Plaintiffs") are Texas limited partnerships that provide medical services in the fields of spinal, bariatric, and orthopedic medicine to patients at their facilities in San Antonio and Houston. Pls.' 1st Am. Compl. ¶¶ 1-2, 36. Defendant Health Care Service Corporation ("Defendant") is a corporation with its principal place of business in Illinois. *Id.* ¶ 3. Plaintiffs

assert that they provided medical services to patients that maintained insurance coverage with Defendant. *Id.* ¶ 37. Many of the patients at issue were insured under the Federal Employees Health Benefits Act ("FEHBA"), which subsidizes payments for federal employees' health insurance. *Id.* ¶ 55 (citing 5 U.S.C. § 8901, *et seq.*); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). The federal employees covered by FEHBA were enrolled in the Service Benefit Plan ("Plan"), and Defendant is the local Blue Cross and Blue Shield company that administers the Plan in Texas. Pls.' 1st Am. Compl. ¶¶ 44, 55 ECF No. 35.

Plaintiffs allege that before medical services were provided to the patients, Plaintiffs conducted an intake interview with the patients and contacted Defendant to verify that the patients and medical services were covered under the patients' health benefit plans. *Id.* Plaintiffs would not provide any medical services until Defendant verified that the patients and services were covered, and Plaintiffs required all patients to execute an assignment of benefits form prior to receiving services. *Id.* ¶¶ 37-38. Plaintiffs allege that after the services were provided they submitted claims to Defendant for payment, but Defendant "either wholly denied Plaintiffs' claims for payment or unilaterally reduced the amount of payment to an unacceptable and unsustainable level." *Id.* ¶ 39.

Plaintiffs brought suit against Defendant "for the underpayment and/or non-payment of reimbursement amounts pursuant to the terms of various health benefit plans administered by [Defendant]." *Id.* ¶ 41. Plaintiffs alleged causes of action against Defendant for (1) breach of the terms of FEHBA Plans, (2) negligent misrepresentation, and (3) promissory estoppel.[1] *Id.* ¶¶ 44, 54-59,

---

[1] Plaintiffs' First Amended Complaint alleges causes of action for (1) ERISA violations; (2) claims relating to FEHBA Plans; (3) breach of contract for non-ERISA and non-FEHBA plans; (4) negligent misrepresentation; and (5) promissory estoppel. *See generally* Pls.' 1st Am. Compl., ECF No. 35. ERISA's provisions do not "apply to any employee benefit plan if such plan is a governmental plan." 29 U.S.C. § 1003(b)(1). Section 1002(32) defines "governmental plan" as a "plan established or maintained for its

64-66, 67-68.  Defendant filed a Motion to Dismiss all of Plaintiffs' claims concerning the Plans.

Def.'s Mot., ECF No. 55.  Defendant asserts that Plaintiffs' FEHBA claims must be dismissed

because Plaintiff may not sue Defendant under FEHBA.  *See id.* at 13-16.  Defendant also contends

that Plaintiffs' state law claims for negligent misrepresentation and promissory estoppel are:

(1) preempted by FEHBA and (2) barred by sovereign immunity.  *See id.* at 17-25.  The issues have

been fully briefed and are ripe for determination.

### B.      Federal Employees Health Benefits Act

FEHBA authorizes the Office of Personnel Management ("OPM") to contract with private

carriers to provide federal employees with health insurance, and OPM is responsible for negotiating

and regulating these health-benefit plans.  *See Empire Healthchoice*, 547 U.S. at 682-83 (citing 5

U.S.C. § 8902(a)); *see also Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d

265, 267 (5th Cir. 2007); *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Personnel

Mgmt.*, 220 F.3d 427, 429 (5th Cir. 2000).  Under FEHBA, the federal government pays about 75%

of the premiums and the enrollees pay the remainder.  *Empire Healthchoice*, 547 U.S. at 684 (citing

5 U.S.C. § 8906(b)).  These premiums are deposited in a special Treasury Fund ("Fund") and carriers

draw from the fund to pay for covered health-care benefits.  *Empire Healthchoice*, 547 U.S. at 684

(citing 5 U.S.C. § 8906(b); 48 C.F.R. § 1632.170(b)); *see also* 5 U.S.C. § 8909(a).  Carriers may

charge costs that are "actual, allowable, allocable, and reasonable," including "[b]enefit costs" and

---

employees by the Government of the United States."  *Id.* (quoting 29 U.S.C. § 1002(32)).  Defendant asserts,
and Plaintiffs do not contest, that ERISA does not apply to the Plans.  Def.'s Mot. 13, ECF No. 55; *see also
Catholic Diocese of Biloxi Supplemental Med. Reimbursement Plan & Catholic Diocese of Biloxi v. Blue
Cross, Blue Shield of Tex.*, 960 F. Supp. 1145, 1148 n.2 (S.D. Miss. 1997).  Furthermore, Plaintiffs
acknowledge that their breach of contract claims are for plans not governed by ERISA or FEHBA.  *See id.*
at 10.  Accordingly, the only claims asserted against Defendant for the Plans are for (1) FEHBA claims; (2)
negligent misrepresentation; and (3) promissory estoppel.

"[a]dministrative expenses."  48 C.F.R. § 1652.216-71(b); *see also* 5 U.S.C. § 8909(a)(2).  OPM

may also transfer unused funds for administrative expenses to the contingency reserves of the plans,

which may be used "as the [OPM] from time to time shall determine."  5 U.S.C. § 8909(b).

A carrier is required to agree "to pay for or provide a health service of supply in an individual

case if the [OPM] finds that the employee . . . is entitled thereto under the terms of the contract."

*Id.* § 8902(j); *see also Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234 (8th Cir. 2012)

("FEHBA . . . carriers . . . conduct business under the delegation of the federal government.").  A

health benefits claim must be submitted initially to the carrier, and if the carrier denies a claim, the

covered individual may ask the carrier to reconsider.  5 C.F.R. § 890.105(a)(1).  If the carrier affirms

its denial, the individual may ask OPM to review the claim.  *Id.*  If OPM finds that the carrier

incorrectly denied the claim, the carrier is required to pay the benefits.  *See* 5 U.S.C. § 8902(j).  If

OPM upholds the denial, however, an individual may seek judicial review of OPM's final action.

5 C.F.R. § 890.107(c); *see also id.* § 890.105(a)(1) ("A covered individual must exhaust both the

carrier and OPM review processes . . . before seeking judicial review of the denied claim.").  A

recovery against OPM is "limited to a court order directing OPM to require the carrier to pay the

amount of benefits in dispute."  *Id.* § 890.107(c).

## II.    PLAINTIFFS' FEDERAL EMPLOYEES HEALTH BENEFITS ACT CLAIM

One of the causes of action asserted in Plaintiffs' First Amended Complaint against

Defendant concerns Plan enrollees.  *See* Pls.' 1st Am. Compl. ¶¶ 44, 54-60, ECF No. 35.  Defendant

administers the Plans in Texas, *Id.* ¶¶ 3, 44, 55, but Defendant contends that Plaintiffs may not bring

a suit against Defendant under FEHBA.  *See* Def.'s Mot. 9, 13, ECF No. 55.  Accordingly,

Defendant moves to dismiss Plaintiffs' FEHBA claims against Defendant.

4

Legal action to review OPM's final action "must be brought against OPM and not against the carrier or carrier's subcontractors." 5 C.F.R. § 890.107(c); *see also* App. Supp. Def.'s Mot. Ex. A (2006 Master Contract), App. at 35, ECF No. 56 ("A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the Carrier . . . ."); *Id.* Ex. C (2008 Master Contract), App. at 35, ECF No. 56-3 (same).  District courts, concurrent with the United States Court of Federal Claims, have original jurisdiction over civil actions against the United States brought under FEHBA.  5 U.S.C. § 8912.  Therefore, FEHBA "opens the federal district-court door to civil actions 'against the United States.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. at 696.  The Supreme Court has noted that FEHBA "channels disputes over coverage or benefits into federal court by designating a United States agency (OPM) *sole defendant* . . . ."  *Id.* at 686-87 (emphasis added); *see also Weight Loss Healthcare Ctrs. of Am., Inc. v. Office of Personnel Mgmt.*, 655 F.3d 1202, 1206 (10th Cir. 2011); *Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d at 277 n.58.  Accordingly, district courts have dismissed FEHBA claims brought against the carrier, rather than OPM.  *See, e.g.*, *Maple v. United States ex rel. Office of Personnel Mgmt.*, No. CIV-09-1405-C, 2010 WL 2640121, at *2 (W.D. Okla. June 30, 2010); *Campbell v. U.S. Office of Personnel Mgmt.*, 384 F. Supp. 2d 951, 953-54 (W.D. Va. 2004); *Catholic Diocese of Biloxi Suppl. Med. Reimbursement Plan & Catholic Diocese of Biloxi v. Blue Cross, Blue Shield of Tex.*, 960 F. Supp. at 1151-52.

As assignees and out-of-network health care providers, Plaintiffs seek "to enforce the terms of the [Plans]" and "to recover benefits due to [Plaintiffs] . . . under the terms of the [Plans]."  Pls.' 1st Am. Compl. ¶¶ 56-57, ECF No. 35 (citing 5 C.F.R. §§ 890.105, 890.107).  Plaintiffs allege Defendant breached the Plans by failing to pay the reimbursements required.  *Id.* ¶¶ 56-59.

5

Plaintiffs, however, brought suit against Defendant, rather than OPM. *See id.* ¶¶ 3, 55. Defendant asserts that Plaintiffs' FEHBA claims must be dismissed because they are in violation of FEHBA and its regulations which authorize a suit against OPM and not the carrier. Def.'s Mot. 13-14, ECF No. 55; *see also Empire Healthchoice*, 547 U.S. at 686-87. Plaintiffs do not address Defendant's assertion in their response and offer no authority to contradict Section 890.107's mandate that OPM is the only proper party to the suit. *See generally* Pls.' Resp., ECF No. 78. Accordingly, the Court finds that Plaintiffs failed to assert FEHBA claims against the correct party under Section 890.107.

## III.    PLAINTIFFS' STATE LAW CLAIMS

Defendant also argues that Plaintiffs' state law claims for negligent misrepresentation and promissory estoppel should be dismissed because they are (1) preempted by FEHBA and (2) barred by sovereign immunity. Def.'s Mot. 17, ECF No. 55. Defendant's sovereign immunity claim is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), while Defendant's assertion that Plaintiffs' claims are preempted by FEHBA is brought pursuant to Rule 12(b)(6).[2] *See id.* at 7, 17. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citation omitted) (internal quotation marks omitted). Accordingly, the Court will address Defendant's sovereign immunity defense first.

---

[2] "Federal preemption is an affirmative defense that a defendant must plead and prove. . . . If the complaint establishes the applicability of a federal preemption defense, it can properly be the subject of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 473 (5th Cir. 2013) (internal quotation marks and citations omitted).

6

### A.      Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  A case will be dismissed under Rule 12(b)(1) if a court "'lacks the statutory or constitutional power to adjudicate the case.'"  *McKinney v. U.S.*, 950 F. Supp. 2d 923, 925-26 (N.D. Tex. 2013) (McBryde, J.) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  The United States is shielded from suit under the doctrine of sovereign immunity, unless it unequivocally expresses its desire to waive immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *U.S. v. Nordic Village*, 503 U.S. 30, 33 (1992). If the government has not waived its immunity, the United States is immune from suit, and a district court is deprived of subject-matter jurisdiction.  *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (internal quotation marks and citations omitted); *see also Meyer*, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature.").  Accordingly, if a party is entitled to sovereign immunity, a court must dismiss the action for lack of subject-matter jurisdiction.  *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009).

Rule 12(b)(1) permits a court to consider a "broader range" of materials than the Rule 12(b)(6) standard.  *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008).  A party may make a factual attack on a court's subject-matter jurisdiction and direct the court to matters outside of the pleadings.  *Sierra Club v. Energy Future Holdings Corp.*, 921 F. Supp. 2d 674, 678 (W.D. Tex. 2013) (citing *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981)).  In considering a Rule 12(b)(1) motion, a court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.*

7

B.      **Analysis**

Defendant asserts that Plaintiffs' state law claims for negligent misrepresentation and promissory estoppel relating to Plan enrollees are barred under the doctrine of sovereign immunity. *See* Def.'s Mot. 23, ECF No. 55. Defendant contends that sovereign immunity extends to contractors in suits where the United States is "the real party in interest" and a judgment against the contractor would be satisfied by the federal Treasury or would impact a federal program. *Id.* Plaintiffs counter that their state law claims are not barred because they seek to recover damages incurred because of Defendant's representations, and not Plan benefits. Pls.' Resp. 5-7, ECF No. 78. Plaintiffs also assert that the United States has waived its sovereign immunity. *Id.* at 7.

Recently, a federal district court found that sovereign immunity barred a plaintiff's claim for money damages against a FEHBA carrier because an order against the carrier would be paid by the federal treasury. *See Calingo v. Meridian Res. Co. LLC*, No. 7:11-cv-628, 2011 WL 3611319, at *12 (S.D.N.Y. Aug. 16, 2011); *see also Jacks v. Meridian Res. Co., LLC*, 701 F.3d at 1235 (declining to address merits of sovereign immunity defense under FEHBA; noting defense was "colorable"). The Fifth Circuit has not addressed whether a FEHBA carrier is entitled to sovereign immunity. *See Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d at 280 (declining to rule on sovereign immunity defense). The Fifth Circuit has extended federal sovereign immunity to Medicare fiscal intermediaries because the United States was the real party in interest, but these cases are not dispositive.[3] *See Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677-78 (5th Cir. 1977).

---

[3] Defendant contends that it is entitled to sovereign immunity under the Fifth Circuit's line of cases extending sovereign immunity to Medicare fiscal intermediaries. *See* Def.'s Mot. 23-24, ECF No. 55 (citing *Matranga*, 563 F.2d at 677-78; *Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55 (5th Cir. 1975); *Peterson v. Weinberger*, 508 F.2d 45, 51-52 (5th Cir. 1975)). These cases, however, did not apply a specific test and relied on a statute that explicitly stated that the real party in interest was the United States. *See*

The Fifth Circuit has established a test to determine whether a private entity is entitled to state sovereign immunity, which the Court will apply in the instant case.[4]

To determine whether a private entity is an "arm of the state" and entitled to state sovereign immunity, the Fifth Circuit employs a six-factor test:

> 1. Whether the state statutes and case law view the agency as an arm of the state;
> 2. The source of the entity's funding;
> 3. The entity's degree of local autonomy;
> 4. Whether the entity is concerned primarily with local as opposed to statewide problems;
> 5. Whether the entity has the authority to sue and be sued in its own name;

---

*Hous. Cmty. Hosp.*, 481 F.3d at 272-73; *Barron*, 381 F.3d at 443.

[4]  The Fifth Circuit has not extended its *state* sovereign immunity test to evaluate a private entity's eligibility for *federal* sovereign immunity. *Roth v. Kiewit Offshore Servs., Ltd.*, 625 F. Supp. 2d 376, 389 (S.D. Tex. 2008); *see also Parrett v. Se. Boll Weevil Eradication Found., Inc.*, 155 F. App'x 188, 191 (6th Cir. 2005) (noting it is "less clear" when private entity is entitled to federal sovereign immunity).  A district court in the Fifth Circuit suggested there are two methods to determine whether a private entity is entitled to federal sovereign immunity: (1) the test established in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and (2) the Fifth Circuit's state sovereign immunity test.  *See Roth*, 625 F. Supp. 2d at 388-89.  The Court will apply the Fifth Circuit's state sovereign immunity test because the parties focused on whether a judgment against Defendant would be paid by the government, which is "the most *significant* factor" in the state sovereign immunity test.  *See* Def.'s Mot. 23-24, ECF No. 55; Pls.' Resp. 5-7, ECF No. 78; *see also Richardson v. S. Univ.*, 118 F.3d 450, 455 (5th Cir. 1997).  Furthermore, the only court to analyze a FEHBA carrier's sovereign immunity claim applied the Second Circuit's state sovereign immunity test. *See Calingo*, 2011 WL 3611319, at *12 (citing *McGinty v. New York*, 251 F.3d 84, 95-96 (2d Cir. 2001)).

The *Boyle* test is typically applied in the context of products liability claims against government contractors, which is reflected in the three parts of the test.  *See Boyle*, 487 U.S. at 512 (stating liability for design defects cannot be imposed when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers . . . ."); *see also In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459-65 (5th Cir. 2010) (discussing *Boyle* test for claims against contractors that constructed levees in New Orleans); *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352-54 (5th Cir. 2010) (applying *Boyle* test for contractors that provided welding rods to United States Navy); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 416-19 (5th Cir. 2001) (affirming summary judgment based on *Boyle* test for companies that provided government with "Agent Orange"); *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 796-98 (5th Cir. 1993) (discussing *Boyle* test for claims against contractor that supplied aircraft to United States Air Force); *Roth*, 625 F. Supp. 2d at 381, 388 (discussing *Boyle* tests for claims against contractors involved in modification of drilling platform).

6. Whether the entity has the right to hold and use property.

*United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004) (citing

*Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999)).  The test "seeks to determine

if the state is the real, substantial party in interest because the suit seeks to impose a liability which

must be paid from public funds . . . ."[5]  *Id.*; *see also Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("The

general rule is that a suit is against the sovereign if the judgment sought would expend itself on the

public treasury or domain, or interfere with the public administration, or if the effect of the judgment

would be to restrain the Government from acting, or to compel it to act.") (citations omitted)

(internal quotation marks omitted); *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir. 1969) ("In

determining whether an action comes within the purview of the sovereign immunity doctrine, the

critical consideration is . . . the result of the judgment . . . which might be entered").  Many of the

factors are difficult to evaluate in the context of a private entity, but the "weightiest factor" is the

source of the entity's funding and whether the state would be directly responsible for a judgment.[6]

---

[5] Other circuits' state sovereign immunity tests also emphasize whether the state would be liable for a judgment against the entity.  *See, e.g.*, *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 718-21 (10th Cir. 2006); *Parrett v. Se. Boll Weevil Eradication Found., Inc.*, 155 F. App'x at 191; *Takle v. Univ. of Wis. Hosp. & Clinics Auth.*, 402 F.3d 768, 769-71 (7th Cir. 2005); *McGinty*, 251 F.3d at 95-96.

[6] The Court notes that the first and fifth factors may also be implicated.  While there is no case law identifying FEHBA carriers as arms of the state, FEHBA explicitly authorizes OPM to contract with qualified carriers.  *See* 5 U.S.C. § 8902(a); *see also Barron*, 381 F.3d at 441.  Carriers are required to pay for or provide health services if OPM finds that the employee is entitled under the terms of the contract.  *Id.* § 8902(j).  FEHBA's regulations also state that any judicial action "must be brought against OPM and not against the carrier . . . ."  5 C.F.R. §890.107(c).  Furthermore, the Fifth Circuit has also noted that "Congress sought to set up a partnership between OPM and private carriers."  *See Hous. Cmty. Hosp.*, 481 F.3d at 271. This indicates that carriers may be more than a purely private corporation.  *Id.* at 441; *see also Jacks v. Meridian Res. Co., LLC*, 701 F.3d at 1234 ("FEHBA . . . carriers . . . are not unrelated and wholly separate business entities merely doing business in a highly regulated arena, but rather conduct business under the delegation of the federal government").  Additionally, as noted, judicial action under FEHBA is limited to a review of OPM's decision to deny a claim, and the action must be brought against OPM.  *See* 5 C.F.R.

*Barron*, 381 F.3d at 440-41; *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 693 (5th Cir. 2002); *Cozzo v. Tangipahoa Parish Council President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002); *see also Calingo*, 2011 WL 2011 WL 3611319, at *12 (noting "most important" factor is whether state is liable for entity's obligations); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1353 (M.D. Ala. 1999) (stating Medicare fiscal intermediaries are entitled to sovereign immunity "to the extent that the government is exposed to risk") (citation omitted) (internal quotation marks omitted).

Defendant asserts that Plaintiffs' claims for negligent misrepresentation and promissory estoppel are barred by sovereign immunity because Defendant draws from the Fund to cover "health benefits costs and [] Plan-administration expenses," and the money used to pay the "Plan benefits that Plaintiffs seek" would come from the Treasury.  Def.'s Mot. 24, ECF No. 55.  Plaintiffs, citing a Fifth Circuit case concerning ERISA preemption, counter that their claims seek to recover damages incurred because of Defendant's representations about coverage, and not Plan benefits, and therefore, a judgment against Defendant would not come from the Fund.  Pls.' Resp. 6-7, ECF No. 78 (citing *Access Mediquip L.L.C. v. UnitedHealthCare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011)).  Plaintiffs, however, appear to read the Master Contracts and regulations too narrowly and ignore the language in the Master Contracts and regulations that determines what constitutes allowable costs.

Under FEHBA, the government pays about 75% of the premiums for the Plans and the enrollees pay the remainder.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. at 684 (citing 5 U.S.C. § 8906(b)).  The premiums are deposited in the Fund and carriers draw directly

---

§ 890.107(c).  Accordingly, a carrier may not be sued in its own name for a dispute over coverage or benefits. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. at 686-87; *Hous. Cmty. Hosp.*, 481 F.3d at 275, 277 n.58.

against the fund to pay for covered health care benefits. *Id.* (citing 5 U.S.C. § 8909(a); 48 C.F.R. § 1632.170(b)); *see also* App. Supp. Def.'s Mot. Ex. A (2006 Master Contract), App. at 39, ECF No. 56 ("Recurring payments from premiums shall be made available for carrier drawdown not later than thirty days after receipt by the Fund."). "The Fund is available . . . to pay expenses for administering this chapter," including "liabilities incurred for covered health care services" and "legal expenses incurred in the litigation of benefit payments . . . ." 5 U.S.C. § 8909(a)(2); 48 C.F.R. § 1652.216-71(b)(2)(i), (ii). Defendant's Master Contracts with OPM provides that "liabilities incurred for covered health care services" and "expenses incurred in [Defendant's] overall operation of the business," including "legal expenses incurred in the litigation of benefit payments," are chargeable to the Fund. *See* App. Supp. Def.'s Mot. Ex. A (2006 Master Contract), App. at 40, ECF No. 56; *Id.* Ex. C (2008 Master Contract), App. at 39-40, ECF No. 56-3 (same); *see also* 48 C.F.R. § 1652.216-71(b)(i), (ii); *Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d at 275 n.47 (highlighting provisions in regulations concerning "liabilities incurred" and "legal expenses incurred"); *Calingo*, 2011 WL 3611319, at *12 (finding carrier entitled to sovereign immunity where Master Contract contained identical provisions).

Plaintiffs assert Defendant is liable for representations regarding coverage under the Plans, and argues that it is seeking to recover damages incurred because of these representations and not "Plan benefits." *See* Pls.' 1 Am. Compl. ¶¶65-66, 68, ECF No. 35; Pls.' Resp. 7, ECF No. 78; *see also id.* ¶ 41 ("[Plaintiffs] bring multiple causes of action against Defendant[] . . . for the underpayment and/or non-payment of reimbursement amounts pursuant to the terms of various health benefit plans . . . ."). These claims for damages, however, concern Defendant's "liabilities incurred for covered health care services" and "legal expenses incurred in the litigation of benefits

12

payments." *See Mun. of Mayaguez v. Corp. Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 16 n.9 (1st Cir. 2013) (noting "[a]ll financial risk [under FEHBA] is . . . borne by the government, not the carrier") (citing *Empire Healthchoice*, 547 U.S. at 703 (Breyer, J., dissenting)).   Accordingly, considering the funding and administration of the Fund and the Master Contracts' reimbursement language, it is clear that an order requiring Defendant to pay damages for the representations would be paid by the federal treasury.  *See Calingo*, 2011 WL 3611319, at *12 (barring claim for money damages where an order "would, in fact, be paid by the federal treasury").  Therefore, sovereign immunity bars Plaintiffs' claims for negligent misrepresentation and promissory estoppel that relate to the FEHBA Plan enrollees.

### C.    Waiver

Plaintiffs argue that the United States has waived its sovereign immunity.  To be effective, the government's waiver of sovereign immunity must be "unequivocally expressed."  *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (citations omitted) (internal quotation marks omitted). Furthermore, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). Plaintiffs contend that the United States waived its sovereign immunity because FEHBA provides: "The district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter." 5 U.S.C. § 8912; Pls.' Resp. 7, ECF No. 78.

"Congress has waived sovereign immunity in the FEHBA context as to coverage disputes brought by federal employee patients."  *Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d at 279.  It is clear, however, that Congress intended only a limited waiver of sovereign

13

immunity because the courts' jurisdiction is confined to review of OPM's final actions, after exhaustion of the administrative procedures, and only one remedy is allowed. *Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315, 1318 (10th Cir. 1999) (citing 5 C.F.R. § 8901.107(c)). Under FEHBA, a recovery against OPM is limited to a court order "directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c); *see also Pellicano v. Blue Cross Blue Shield Ass'n*, No. 11-406, 2012 WL 1828027, at *5 n.8 (M.D. Pa. May 18, 2012) (stating "[c]onsiderations of sovereign immunity" barred court from considering claims seeking compensation for emotional distress, punitive damages, and reimbursement for expenses because "damage request is outside the scope of authorized relief under FEHBA").

FEHBA's jurisdictional provision "carve[s] out an exception to the statutory rule that claims brought against the United States and exceeding $10,000 must originate in the Court of Federal Claims." *Empire Healthchoice*, 547 U.S. at 686. This provision "channels disputes over coverage or benefits" into federal court, *id.* at 686-87, and allows a covered individual to seek judicial review of "OPM's final action on the denial of a health benefits claim." 5 C.F.R. § 890.107(c). FEHBA "ensure[s] that beneficiaries' suits [against the United States] will land in federal court. Had Congress found it necessary or proper to extend federal jurisdiction to contract-derived reimbursement claims between carriers and insured workers, it would have been easy enough to say so." *Empire Healthchoice*, 547 U.S. at 680. Therefore, while Congress may have waived the United States' sovereign immunity for claims brought against OPM to review a denial of benefits under FEHBA, Congress did not waive sovereign immunity for state law claims for monetary damages.

### D.    Leave to Amend

Plaintiffs contend that their claims may not be dismissed without an opportunity to amend

14

their Complaint.  *See* Pls.' Resp. 15, ECF No. 78 (citing Fed. R. Civ. P. 15(a)).  "Under Rule 15(a)

. . . a court should 'freely give leave' for a party to amend the pleadings 'when justice so requires.'"

*Mailing & Shipping Sys., Inc. v. Neopost USA, Inc.*, 292 F.R.D. 369, 376 (W.D. Tex. 2013) (quoting

Fed. R. Civ. P. 15(a)).  The decision whether to allow a party to amend its pleadings is within the

sound discretion of the court, but courts consider a number of factors, such as: "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, and futility of amendment."  *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 759 (N.D.

Tex. 2013) (Lindsay, J.) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Schiller v. Physicians

Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)) (internal quotation marks omitted).  Courts should

generally grant leave to amend, unless amendment would be futile.  *Chartis Speciality Ins. Co. v.

Tesoro Corp.*, 930 F. Supp. 2d 653, 671 (W.D. Tex. 2013) (citing *Jebaco, Inc. v. Harrah's

Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009)).

The Court finds that allowing Plaintiffs to amend their First Amended Complaint would be

futile.  The Court found that Plaintiffs' FEHBA claims against Defendant must be dismissed because

a suit to review OPM's action denying health benefits must be brought against OPM and not the

carrier.  *See Empire Healtchoice Assur., Inc. v. McVeigh*, 547 U.S. at 686-87 (citing 5 C.F.R.

§ 890.107(c)).  Furthermore, the Court found Plaintiffs' state law claims barred by sovereign

immunity.  Therefore, the issues raised in Defendant's motion would not be cured through an

amended pleading.  *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013); *Hotze v. Sebelius*, ___

F. Supp. 2d ___, 2014 WL 109407, at *15 (S.D. Tex. 2014); *see also Kersh v. UnitedHealthcare Ins.

Co.*, 946 F. Supp. 2d 621, 645 (W.D. Tex. 2013) (declining to grant leave to amend where court

found plaintiff's breach of contract claim was preempted by ERISA).  Accordingly, the Court finds

that Plaintiffs are not entitled to an opportunity to replead their claims relating to FEHBA Plan

enrollees.

IV.     **CONCLUSION**

Based on the foregoing, Defendant Health Care Service Corporation's Motion to Dismiss

(ECF No. 55) is **GRANTED**.  Therefore, Plaintiffs' FEHBA claims are **DISMISSED** and Plaintiffs'

negligent misrepresentation and promissory estoppel claims relating to FEHBA Plan enrollees are

**DISMISSED**.  Plaintiffs' request for leave to amend their First Amended Complaint is **DENIED**.

**SO ORDERED** on this **3rd day** of **February, 2014.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**