IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INNOVA HOSPITAL SAN ANTONIO, L.P. et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 3:12-cv-1607-O |
| BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC. et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Blue Cross of California, Anthem Health Plans, Inc.,

Community Insurance Company, Anthem Health Plans of Kentucky, Inc., Anthem Blue Cross Life

and Health Insurance Company, Anthem Health Plans of Virginia, Inc., Blue Cross and Blue Shield

of Georgia, Inc., and Anthem Insurance Companies, Inc.'s (collectively "Anthem Defendants")

Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support (ECF Nos. 43, 43-1),

filed September 7, 2012; Plaintiffs Innova Hospital San Antonio, L.P. and Victory Medical Center

Houston, L.P.'s (collectively "Plaintiffs") Response in Opposition to Anthem Defendants' Motion

to Dismiss and Brief in Support (ECF Nos. 96, 98), filed October 29, 2012; and Anthem Defendants'

Reply (ECF No. 105), filed November 12, 2012.[1]

---

[1] Plaintiffs named thirty-three parties as Defendants in this action.  *See* Pls.' 1st Am. Compl. 2-3, ECF No. 35. Six other motions to dismiss have been filed by the other Defendants in this action.  Defendants Health Care Service Corporation, Blue Cross Blue Shield of Wyoming, Blue Cross and Blue Shield of South Carolina, Hawaii Medical Service Association d/b/a Blue Cross and Blue Shield of Hawaii, Blue Cross and Blue Shield of Rhode Island, BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota, Regence BlueShield, Blue Cross and Blue Shield of North Carolina, Blue Cross and Blue Shield of Nebraska, Blue Cross and Blue Shield of Mississippi, Noridian Mutual Insurance Company, Highmark West Virginia, Inc.,

Also before the Court are Defendant Blue Cross and Blue Shield of Alabama's ("BCBS Alabama") Motion to Compel Arbitration and for Dismissal of Certain Claims and Brief in Support (ECF No. 49), filed October 1, 2012; Plaintiff Victory Medical Center Houston, L.P.'s ("Victory") Response to BCBS Alabama's Motion to Compel Arbitration and Brief in Support (ECF Nos. 73-74), filed October 22, 2012; and BCBS Alabama's Reply (ECF No. 99), filed November 5, 2012. Also before the Court are Defendant Capital BlueCross's ("Capital") Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), Alternative Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3), and Alternative Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6) (ECF No. 52), filed October 1, 2012; Plaintiffs' Response in Opposition to Capital's Motion to Dismiss and Brief in Support (ECF Nos. 79-80), filed October 22, 2012; and Capital's Reply (ECF No. 102), filed November 5, 2012.[2]

After reviewing the motions and the applicable law, the Court finds Anthem Defendants' Motion to Dismiss (ECF No. 43), BCBS Defendants' Motion to Dismiss (ECF No. 48); BCBS Tennessee's Motion to Dismiss (ECF No. 53); and BCBS Kansas's Motion to Dismiss (ECF No. 106) should be and are hereby **GRANTED.** The Court also finds BCBS Alabama's Motion to

---

Wellmark, Inc. d/b/a Blue Cross and Blue Shield of Iowa, Highmark, Inc. d/b/a Highmark Blue Cross Blue Shield of Pennsylvania, Premera Blue Cross, Blue Cross and Bleu Shield of Florida, Blue Cross and Blue Shield of Michigan, Care First of Maryland, Inc., USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield, Blue Cross and Blue Shield of Alabama, and Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana (collectively "BCBS Defendants") (ECF No. 48); Blue Cross Blue Shield of Tennessee, Inc. ("BCBS Tennessee") (ECF No. 53); and Blue Cross and Blue Shield of Kansas, Inc. ("BCBS Kansas") (ECF No. 106), filed motions to dismiss asserting arguments similar to those asserted by the Anthem Defendants. Accordingly, the Court incorporates the foregoing motions in its analysis of Anthem Defendants' Motion to Dismiss (ECF No. 43).

[2] Capital adopted the arguments made in BCBS Defendants Motion to Dismiss in its alternative Motion to Dismiss for Failure to State A Claim. *See* Capital's Br. Supp. Mot. Dismiss 17, ECF No. 52-1.

Compel Arbitration (ECF No. 49) should be and is hereby **GRANTED**, and Capital's Motion to Dismiss (ECF No. 52) should be and is hereby **GRANTED**.

## I.   BACKGROUND

Plaintiffs are Texas limited partnerships that provide medical services in the fields of spinal, bariatric, and orthopedic medicine in San Antonio and Houston, Texas.  Pls.' 1st Am. Compl. ¶¶ 1-2, ECF No. 35.  Plaintiffs filed this lawsuit against thirty-three "plan administrators in the Blue Cross Blue Shield family of insurance companies" (collectively "Defendants") who insured patients that received medical services from Plaintiffs.  *Id.* ¶¶ 3-34, 36-37.  Plaintiffs assert that they conducted an initial intake interview with the patients prior to rendering medical services and contacted Defendants "to verify that the patients were covered under the Defendants' health benefit plans" and "to verify that the services . . . were covered under the insureds' various plans."  *Id.* ¶ 37.  Plaintiffs allege Defendants verified the services were covered under the various plans before Plaintiffs provided any medical services.  *Id.*  Plaintiffs also allege that Plaintiffs required all patients to execute an assignment of benefits form before medical services were provided.  *Id.* ¶ 38.

Plaintiffs allege they submitted claims to the Defendants for payment and billed their "usual and customary charges" after the medical services were provided.  *Id.* ¶ 39.  Plaintiffs assert that they provided the medical services in good faith, in part based on the representations by Defendants during the verification process.  *Id.*  Plaintiffs allege, however, that Defendants "often either wholly denied Plaintiffs' claims for payment or unilaterally reduced the amount of payment to an unacceptable and unsustainable level."  *Id.*  Accordingly, Plaintiffs filed the instant lawsuit "for the underpayment and/or non-payment of reimbursement amounts pursuant to the terms of various health benefit plans administered by Defendants."  *Id.* ¶ 41.  Plaintiffs attached a claim schedule to

3

their First Amended Complaint ("Claim Schedule") that provides information about the claims being asserted. *Id.*; *see also* Pls.' 1st Am. Compl. Exs. 1-2 (Claim Schedule), ECF Nos. 35-1, 35-2.

Plaintiffs' First Amended Complaint asserts four causes of action against the Defendants.[3] First, Plaintiffs allege that Defendants violated the Employee Retirement Income Security Act ("ERISA") and Plaintiffs seek to enforce the terms of the various health benefits plans under 29 U.S.C. § 1132(a)(1)(B). Pls.' 1st Am. Compl. ¶ 47, ECF No. 35. Plaintiffs, however, "lack the information necessary to determine which of the claims . . . fall within ERISA and shall determine same during the course of discovery." *Id.* ¶ 53 n.1. Second, Plaintiffs assert a cause of action for breach of contract for the health plans not governed by ERISA and seek recovery of the benefits due under the contracts. *Id.* ¶¶ 62-63. Third, Plaintiffs allege Defendants are liable for negligent misrepresentations made regarding the patients' coverage under the health care plans. *Id.* ¶¶ 65-66. Finally, Plaintiffs bring a cause of action for promissory estoppel for Defendants' representations that they would pay Plaintiffs for the services rendered to the patients. *Id.* ¶ 68.

## II.   ANTHEM DEFENDANTS' MOTION TO DISMISS

### A.   Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff's pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

---

[3] Plaintiffs also assert a cause of action for the breach of the health benefit plans governed by the Federal Employees Health Benefits Program ("FEHBA"). Pls.' 1st Am. Compl. ¶¶ 54-60, ECF No. 35. Plaintiffs, however, only assert FEHBA claims against Defendant Health Care Service Corporation ("HCSC"). *See id.* ¶¶ 44, 55-59.

4

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("[A] complaint . . . must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (internal quotation marks and citations omitted). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the compliant has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). While legal conclusions can provide "the framework" of a complaint, they must be supported by factual allegations. *Iqbal*, 556 U.S. at 679; *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a

motion to dismiss.  *Iqbal*, 556 U.S. at 678-79; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642

(5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiffs and we will not

accept conclusory allegations, unwarranted deductions, or legal conclusions.") (internal quotation

marks and citation omitted).  When there are well-pleaded factual allegations, the court assumes their

veracity and then determines whether they plausibly give rise to an entitlement to relief.  *Iqbal*, 556

U.S. at 679.  "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper

attachments, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice."  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.

2011) (citations and internal quotation marks omitted).

   **B.     Analysis**

   Anthem Defendants assert that Plaintiffs' First Amended Complaint is "devoid of any factual

basis with which to support its contentions."[4]  Anthem Defs.' Br. Supp. Mot. Dismiss 7, ECF No.

43-1.  Anthem Defendants argue Plaintiffs' four causes of action for (1) violations of ERISA,

(2) breach of contract, (3) negligent misrepresentation, and (4) promissory estoppel, should be

dismissed for failure to state a claim for relief pursuant to Rule 12(b)(6).  Anthem Defendants also

assert Plaintiffs failed to plead sufficient facts to establish their standing to assert causes of action

for breach of contract and violations of ERISA as assignees.  The Court will address each cause of

action, but must first address whether Plaintiffs sufficiently pleaded standing to assert these claims.[5]

_____

   [4]   As noted, BCBS Defendants' Motion to Dismiss (ECF No. 48), BCBS Tennessee's Motion to
Dismiss (ECF No. 53), and BCBS Kansas's Motion to Dismiss (ECF No. 106) present arguments similar to
those raised in Anthem Defendants' Motion to Dismiss, and the Court incorporates these motions in its
analysis of Anthem Defendants' Motion to Dismiss.

   [5]   Anthem Defendants also assert that Plaintiffs' state law claims for negligent misrepresentation and
promissory estoppel that relate to an ERISA plan are preempted.  *See* Br. Supp. Mot. Dismiss 18, ECF

6

1.      Standing to Assert Claims on Behalf of Anthem Defendants' Members

Plaintiffs' ERISA and breach of contract claims are based on their alleged status as assignees of the rights of the patients that received medical services from Plaintiffs.  *See* Pls.' 1st Am. Compl. ¶¶ 47, 62, ECF No. 35.  While the Anthem Defendants do not dispute that an insured may assign rights under a health insurance plan to a medical provider, *see* Reply 5, ECF No. 105, Anthem Defendants assert Plaintiffs failed to adequately show that they have standing to assert the rights of the patients because Plaintiffs failed to attach the assignments to their complaint or cite language from the assignments.  Br. Supp. Mot. Dismiss 11-12, ECF No. 43-1.

A medical provider cannot enforce the terms of a healthcare plan on its own account, *Christus Health Gulf Coast v. Aetna, Inc.*, 347 S.W.3d 726, 734 (Tex. App.—Houston [14th Dist.] 2011), *aff'd*, 397 S.W.3d 651 (Tex. 2013), but a provider may have standing to sue derivatively to enforce an ERISA plan beneficiary's claim through a valid assignment.  *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 300 (S.D. Tex. 2011); *see also Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891-92 (5th Cir. 2003).  A provider may maintain a breach of contract claim if it establishes that the defendant was "a party to an enforceable contract with . . . a party who assigned its cause of action to the plaintiff."  *First-Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.) (internal quotation marks and citation omitted).  Accordingly, "[t]o state a basis to recover under ERISA or for breach of an insurance policy, [a medical provider] must plead that the

---

43-1.  Plaintiffs argue that the Fifth Circuit has consistently found that claims similar to Plaintiffs' negligent misrepresentation and promissory estoppel claims are not preempted by ERISA.  *See* Br. Supp. Resp. Opp'n Mot. Dismiss 23-24, ECF No. 98.  In light of the Court's finding that Plaintiffs' First Amended Complaint fails to state a claim for negligent misrepresentation or promissory estoppel, the Court finds that it is not necessary at this time to determine whether these claims are preempted.

patients covered under the plan or policy assigned their rights to [the provider]." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, ___ F. Supp. 2d ___, 2013 WL 3980582, at *14 (S.D. Tex. Aug. 2, 2013) (citing *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 811 (D.N.J. 2011); *Christus Health Gulf Coast*, 347 S.W.3d at 734).

Accepting as true all of Plaintiffs' allegations, the Court finds that Plaintiffs adequately alleged standing as an assignee of the ERISA and non-ERISA plans. *N Cypress Med. Ctr.*, 782 F. Supp. 2d at 301. Plaintiffs allege they required all patients to "execute an assignment of benefits form prior to receiving healthcare services," and that Plaintiffs received an assignment of benefits from the patients. Pls.' 1st Am. Compl. ¶¶ 38, 47-49, 62, ECF No. 35. Plaintiffs also allege that they had the right to enforce the terms of the plans and recover the benefits due under the plans. *Id.* ¶¶ 47-51, 62. *Compare Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*, No. 3:11-cv-02487-L, 2012 WL 3030376, at *4 (N.D. Tex. July 25, 2012) (holding allegations in complaint alleging "[plaintiff] possesses . . . Assignments of Benefits from each patient on behalf of whom [plaintiff] asserts claims herein" were sufficient to establish standing based on assignment), *and N. Cypress Med. Ctr.*, 782 F. Supp. 2d at 301-02 (finding provider adequately pleaded valid assignment where complaint alleged provider "obtains an Assignment of Benefits and Rights that makes [provider] a beneficiary of the ERISA plan and the non-ERISA contracts"), *with Electrostim Med. Servs.*, 2013 WL 3980582, at *14 (noting provider failed to plead valid assignment where complaint "contain[ed] no assignment allegations"). Therefore, the Court finds Plaintiffs sufficiently pleaded standing based on an assignment of rights.[6]

---

[6] BCBS Defendants also argue Plaintiffs failed to allege an "express and knowing assignment of an ERISA fiduciary breach claim," as required by the Fifth Circuit in *Texas Life, Accident & Hospital Service Inc. Guaranty Ass'n v. Gaylord Entertainment Co.*, 105 F.3d 210, 218 (5th Cir. 1997); BCBS Defs.' Mot.

2.      Count I-ERISA

Plaintiffs first cause of action is brought under Section 502(a) of ERISA "to recover benefits

due[,] . . . to enforce the rights[,] . . . [and] to clarify the rights to future benefits . . . under the terms

of the [ERISA-governed plans] . . . ."  Pls.' 1st Am. Compl. ¶¶ 47-49, ECF No. 35.  Plaintiffs assert

Anthem Defendants are liable for breaching ERISA-governed plans by failing to make payments as

required under the terms of the plans.  *Id.* ¶¶ 51-52.  Anthem Defendants argue Plaintiffs' ERISA

claim should be dismissed because Plaintiffs fail to identify plan language that shows Plaintiffs are

entitled to additional benefits under the plans.  *See* Br. Supp. Mot. Dismiss 13, ECF No. 43-1.

Under Section 502(a), a participant or beneficiary in an ERISA-governed plan may bring a

civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C.

§ 1132(a)(1)(B).  Section 502(a) is "relatively straightforward":

> If a participant or beneficiary believes that benefits promised to him
> under the terms of the plan are not provided, he can bring suit seeking
> provision of those benefits.  A participant or beneficiary can also
> bring suit generically to "enforce his rights" under the plan, or to
> clarify any of his rights to future benefits.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (quoting *Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 115 (1989)) (internal quotation marks omitted); *see also Heimeshoff v.*

---

Dismiss 10, ECF No. 48.  The Fifth Circuit in *Gaylord* held that "fiduciary duty breach claim[s] . . . are not
assigned by implication or by operation of law.  Instead, only an express and knowing assignment of an
ERISA fiduciary breach claim is valid."  *Gaylord*, 105 F.3d at 218; *see also N. Cypress Med. Ctr.*, 782 F.
Supp. 2d at 302-03.  *Gaylord* concerned a motion for summary judgment where there was no evidence in the
record that there was an express and knowing assignment of fiduciary duty breach claims.  *Id.* at 219.  Here,
Plaintiffs do not assert that they were assigned rights by implication or by operation of law; Plaintiffs allege
that all patients were required to execute an assignment and made express and knowing assignments.  Pls.'
1st Am. Compl. ¶¶ 38, 47-51, ECF No. 35.  Accordingly, the Court finds that Plaintiffs sufficiently pleaded
that they received a valid assignment to establish standing.

*Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 612 (2013) ("[W]e have recognized the particular importance of enforcing plan terms as written in [Section] 502(a)(1)(B) claims.") (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876-77 (2011)).

The phrase "terms of the plan" is "[w]orthy of emphasis" because parties derive rights to benefits from the plan, *Aaron v. Leday*, No. 4:13-cv-01716, 2013 WL 5936623, at *2 (S.D. Tex. Nov. 5, 2013) (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 113; *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998)), and Section 502(a) only authorizes enforcement of the "terms of the plan." *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (citing *CIGNA Corp.*, 131 S. Ct. at 1878) (internal quotation marks omitted); *see also Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by [Section] 502(a), as the provider is seeking to enforce the terms of the plan.") (internal citation omitted).  Accordingly, to assert a claim for benefits under ERISA, a plaintiff must "identify a specific plan term that confers the benefits in question." *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-cv-2205-D, 2012 WL 5868249, at *2 (N.D. Tex. Nov. 20, 2012) (Fitzwater, C.J.) (citing *Stewart v. Nat'l Educ. Ass'n*, 404 F. Supp. 2d 122, 130 (D.D.C. 2005), *aff'd*, 471 F.3d 169 (D.C. Cir. 2006)) (internal quotation marks omitted); *see also Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013) (finding plaintiffs must "identify the specific plan terms allegedly breached and the manner of their breach" for ERISA claims); *Afram v. United Food & Commercial Workers Union & Participating Emp'rs Health & Welfare Fund*, ___ F. Supp. 2d ___, 2013 WL 3974096, at *2 (D.D.C. 2013) (stating plaintiff bringing claim under ERISA must "identify

a specific plan term that confers the benefit in question"); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 2013 WL 3980582, at *11 (dismissing ERISA cause of action because plaintiff "failed to identify a plan term that makes its claims eligible for reimbursement") (internal citations omitted).  A complaint must contain enough facts about a plan's provisions to make a Section 502(a) claim plausible and give the defendant notice as to which provisions it allegedly breached. *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 969 (E.D. Tex. 2011); *see also Paragon Office Servs.*, 2012 WL 5868249, at *2 ("The plaintiff must provide the court with enough factual information to determine whether the services were indeed covered services under the plan. . . . Without information as to the terms and provisions of the plan . . . the complaint fails to state a claim upon which relief can be granted.") (internal quotation marks and citations omitted).

Plaintiffs generally allege that Anthem Defendants failed "to make payments of benefits to [Plaintiffs] . . . as required under the terms of the [ERISA-governed] plans," Pls.' 1st Am. Compl. ¶ 51, ECF No. 35, and argue the Claim Schedule "gives more than sufficient detail . . . of each patient claim."  Br. Supp. Resp. Opp'n Mot. Dismiss 15, ECF No. 98; *see also* Pls.' 1st Am. Compl. ¶¶ 47-53, ECF No. 35.  Plaintiffs acknowledge that Section 502(a) allows a beneficiary to seek provision of "benefits promised to him under the terms of the plan," Br. Supp. Resp. Opp'n Mot. Dismiss 16, and seek "to recover benefits due . . . under the terms of the plans" and "to enforce the rights . . . under the terms of the plans," Pls.' 1st Am. Compl. ¶¶ 47-48, ECF No. 35.  Plaintiffs do not, however, identify the terms of the plans that were allegedly breached.[7]  *See Electrostim Med.*

---

[7] Plaintiffs also concede that they "lack the information necessary to determine which of the claims . . . fall within ERISA" and hope to determine this through discovery. Pls.' 1st Am. Compl. ¶ 53 n.1, ECF No. 35.  Rule 8, however, does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. at 678-79; *see also Ctr. for Reconstructive Breast Surgery*, 2013 WL 5519320, at *1 ("On the most basic level, Plaintiffs fail to distinguish between the patients who

*Servs.*, 2013 WL 3980582, at *11; *Encompass Office Solutions*, 775 F. Supp. 2d at 969; *Paragon Office Servs.*, 2012 WL 5868249, at *2. The First Amended Complaint provides conclusory allegations that Anthem Defendants breached the terms of the plans, but lacks factual allegations to support Plaintiffs' claims that Anthem Defendants' payments violated the terms of the plans.

Furthermore, the Claim Schedule provides information about patient claims and charges, but does not provide facts about the benefits due under the terms of the plans or provide factual allegations about the terms of the plans to show that Anthem Defendants breached the plans. *See* Pls.' 1st Am. Compl. Exs. 1-2 (Claim Schedule), ECF Nos. 35-1, 35-2. Plaintiffs' general allegations that Anthem Defendants did not reimburse the amounts due under the terms of the plans, without further factual assertions about the plans' terms, fall short of the plausibility requirement. *See Ashcroft v. Iqbal*, 556 U.S. at 678 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).

The First Amended Complaint and Claim Schedule allege Anthem Defendants failed to pay reimbursements required by the plans and that Plaintiffs are entitled to additional payment under the plans, but do not identify facts about Plaintiffs' rights under the plans or how Anthem Defendants violated the plans. Plaintiffs fail to allege facts that allow the Court to reasonably infer that Anthem Defendants violated the terms of the plans and that Plaintiffs are entitled to recover benefits, enforce their rights, or clarify their rights to future benefits "under the terms of the plan[s]." 29 U.S.C. § 1132(a)(1)(B). Accordingly, the Court finds that Plaintiffs fail to state a claim under ERISA.

---

were participants in an ERISA covered plan and those who were not—a crucial distinction.").

3.      Count II-Breach of Contract

Plaintiffs second cause of action alleges Anthem Defendants breached the health benefits plans not governed by ERISA by failing to pay the reimbursement rate "required by the contracts." Pls.' 1st Am. Compl. ¶¶ 62-63, ECF No. 35.   Anthem Defendants argue Plaintiffs' conclusory allegations that Anthem Defendants breached unidentified terms of the plans are insufficient to state a claim.  *See* Br. Supp. Mot. Dismiss 15-16, ECF No. 43-1.  Plaintiffs counter that the pleadings provide sufficient notice and state that they are not required to outline all the elements of their claim. Br. Supp. Resp. Opp'n Mot. Dismiss 17-19, ECF No. 98 (quoting *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)).

To establish a breach of contract cause of action, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages suffered by the plaintiff as a result of the breach."  *Beauty Mfg. Solutions Corp. v. Ashland, Inc.*, 848 F. Supp. 2d 663, 667 (N.D. Tex. 2012) (Fish, J.) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist] 2005, pet. denied)).  Anthem Defendants argue Plaintiffs failed to plead facts showing performance was tendered and failed to identify provisions that were breached.  *See* Br. Supp. Mot. Dismiss 15-16, ECF No. 43-1.

"A breach of contract . . . only occurs when a party fails or refuses to perform an act that it expressly promised to do."  *Gonzales v. Columbia Hosp. at Med. City Dall. Subsidiary LP*, 207 F. Supp. 2d 570, 575 (N.D. Tex. 2002) (Solis, J.) (citing *Methodist Hosps. of Dall. v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex. App.—Dallas 1991, writ denied)).  To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was

13

allegedly breached.  *See, e.g.*, *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011); *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1003-04 (S.D. Tex. 2011); *Encompass Office Solutions*, 775 F. Supp. 2d at 953-54; *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005) (Godbey, J.); *see also Bayway Sersv., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("A petition in an action based on a contract must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including . . . the substance of the contract which supports the pleader's right to recover.") (internal citation omitted)*.*

Plaintiffs allege Anthem Defendants were "required to abide by the terms and conditions of the contracts . . . [and] materially breached the terms of the contracts" by paying reimbursements that were "substantially less . . . than what [wa]s actually owed" under the plans.  Pls.' 1st Am. Compl. ¶¶ 45, 63, ECF No. 35.  Plaintiffs are not required to outline all the elements of the claim, but Plaintiffs must provide enough factual allegations to draw the reasonable inference that the elements exist.  *See Patrick v. Wal-Mart, Inc.–Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012); *Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 554 (N.D. Tex. 2001) (Mahon, J.); *see also Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.") (internal quotation marks and citation omitted); *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery . . . .") (internal quotation marks and citations omitted).

Plaintiffs failed to allege enough facts about the terms of the plans to raise their right to relief

14

above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. Plaintiffs do not identify

what provisions were breached or provide factual allegations about the terms of the plans. Plaintiffs'

claim is based on their conclusion that Anthem Defendants failed to pay the reimbursement rate

"required by the contracts" or the "contractually agreed upon amounts," but Plaintiffs do not allege

what rates were required or contractually agreed upon by the parties. Pls.' 1st Am. Compl. ¶ 63,

ECF No. 35. *Compare Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 759 (N.D.

Tex. 2012) (Lynn, J.) (finding plaintiff stated plausible claim where complaint discussed specific

contract provisions allegedly breached), *Watson*, 814 F. Supp. 2d at 732 (stating plaintiffs

sufficiently alleged breach of contract claim where complaint alleged defendant failed to abide by

specific contractual provision), *Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 836-37 (N.D. Tex. 2011)

(Fitzwater, C.J.) (finding plaintiff alleged plausible claim where she identified "particular provision

in question" and "particular acts or omissions" that breached contract), *and Encompass Office

Solutions*, 775 F. Supp. 2d at 953-54 (finding plaintiff "identified plan provisions in . . . a [sufficient]

manner" and alleged "enough facts about plan provisions to make its breach of contract claim

plausible"), *with Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 2013 WL 3980582, at *11

(finding plaintiff failed to allege plausible basis for relief where complaint "contain[ed] no factual

allegations that the denials were improper or incorrect"), *Motten*, 831 F. Supp. 2d at 1003-04 (noting

plaintiffs failed to specify "key terms" of contracts and "what and how they were breached"),

*Hoffman*, 774 F. Supp. 2d at 837 (noting plaintiff failed to plead a plausible claim because she did

not allege "specific act or omission of [defendant] that failed to comply with its obligations"), *and

Am. Realty Trust*, 362 F. Supp. 2d at 753 (dismissing complaint that neither attached nor referenced

disputed contract; finding complaint did not give "adequate notice as to the nature and scope of the

breach of contract claim").

Plaintiffs rely on the Claim Schedule attached to their First Amended Complaint and assert the Claim Schedule "sets out each and every non-ERISA contract alleged to have been breached . . . ." Br. Supp. Resp. Opp'n Mot. Dismiss 19, ECF No. 98. The Claim Schedule, however, does not contain factual allegations about the terms of the plans or the provisions allegedly breached by Anthem Defendants. Rather, the Claim Schedule lists nine hundred and ninety-nine claims against thirty-three defendants and various charges and payments. *See* Pls.' 1st Am. Compl. ¶ 41, ECF No. 35; *see also* Pls.' 1st Am. Compl. Exs. 1-2 (Claim Schedule), ECF Nos. 35-1, 35-2; Br. Supp. Mot. Dismiss 8, ECF No. 43-1. The Claim Schedule does not identify the non-ERISA contracts and Plaintiffs admit they cannot identify these contracts. *See* Pls.' 1st Am. Compl. ¶ 53 n.1, ECF No. 35. Furthermore, the Claim Schedule contains no factual allegations regarding what rates were "contractually agreed upon" or "required by the contracts."[8] *Id.* ¶ 63.

Plaintiffs' allegations that they did not receive the reimbursements owed under the plans and their general conclusion that "the acts and omissions on part of [Anthem] Defendants noted hereinabove constitute breaches of contract" are not sufficient to state a claim for relief. *See* Pls.' 1st Am. Compl. ¶ 62, ECF No. 35; *see also Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009) ("[C]onclusory statement that 'the actions and/or omissions of Defendants described herein above constitute a breach of contract' does not suffice to meet the pleading requirements of Rule 8(a)."). Plaintiffs' allegations do not contain enough facts about the terms of the non-ERISA plans to allow the Court to reasonably infer that Anthem Defendants breached these

---

[8] Plaintiffs acknowledge they billed their "usual and customary charges," and, therefore, it appears the Claim Schedule likely reflects these "customary charges," rather than the rates required by the contracts. Pls.' 1st Am. Compl. ¶ 39, ECF No. 35.

plans.  Accordingly, the Court finds that Plaintiffs have failed to state a claim for breach of contract.

        4.      Count III-Negligent Misrepresentation

        Plaintiffs also allege Anthem Defendants negligently misrepresented that the patients and

medical services were covered under the health benefit plans.  Pls.' 1st Am. Compl. ¶¶ 37, 65, ECF

No. 35.  Plaintiffs assert that they justifiably relied on these representations and that they suffered

damages as a result of their reliance.  *Id.* ¶¶ 65-66.  To establish a cause of action for negligent

misrepresentation, a plaintiff must plead:

> (1) the defendant made a representation in the course of his business,
> or in a transaction in which he has a pecuniary interest; (2) the
> defendant supplied false information for the guidance of others in
> their business; (3) the defendant did not exercise reasonable care or
> competence in obtaining or communicating the information; and (4)
> the plaintiff suffered pecuniary loss by justifiably relying on the
> representation.

*Miller v. CitiMortgage, Inc.*, ___ F. Supp. 2d ___, 2013 WL 4766808, at *11 (N.D. Tex. 2013);

*Ostrovitz & Gwinn, LLC v. First Speciality Ins. Co.*, 393 S.W.3d 379, 397 (Tex. App.—Dallas 2012,

no pet.).  "[T]he 'false information' contemplated in a negligent misrepresentation case must be a

misstatement of an existing fact rather than a promise of future conduct."  *Scherer v. Angell*, 253

S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.) (internal citations omitted).  Anthem

Defendants argue Plaintiffs failed to plead facts showing Anthem Defendants supplied false

information or that Anthem Defendants failed to exercise reasonable care or competence in obtaining

or communicating the information.  *See* Br. Supp. Mot. Dismiss 17, ECF No. 43-1.

        Plaintiffs again contend that they are not required to outline each element of their claim and

argue the Claim Schedule "sets out additional details involving each and every instance of a

misrepresentation."  Br. Supp. Resp. Opp'n Mot. Dismiss 20-21, ECF No. 98.  Rule 8(a) does not

require detailed factual allegations, but Plaintiffs must offer more than "labels and conclusions," and must plead enough facts to raise Plaintiffs' right to relief above the speculative level. *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555); *see also Jones v. Hous. Cmty. Coll. Sys.*, 816 F. Supp. 2d 418, 424 (S.D. Tex. 2011) ("Rule 8 . . . requires a showing, rather than a blanket assertion, of entitlement to relief.") (internal quotation marks and citations omitted).   Accordingly, to make out a valid claim for negligent misrepresentation, Plaintiffs must allege specific facts that support the elements of the claim.[9]  *Wilson v. Birnberg*, 667 F.3d at 595.

The Court finds that Plaintiffs' allegations, taken as true, do not allege enough facts to state a claim for relief that is plausible on its face.  Plaintiffs allege Anthem Defendants represented that the patients and the medical services were covered under the health benefit plans before Plaintiffs provided the services.  Pls. 1st Am. Compl. ¶¶ 37, 65, ECF No. 35.  These allegations are sufficient to show that Anthem Defendants made a representation in the course of its business.  Plaintiffs' allegations, however, do not allow the Court to draw the reasonable inference that Anthem Defendants supplied false information for the guidance of others and did not exercise reasonable care or competence in obtaining or communicating the information.

In pleading its negligent misrepresentation claim, Plaintiffs merely recite the elements of the

---

[9]  Courts within the Fifth Circuit require a plaintiff to allege specific facts that, if proven, would show the elements of a claim for negligent misrepresentation.  *See Borneo Energy Sendirian Behad v. Sustainable Power Corp.*, 646 F. Supp. 2d 860, 869 (S.D. Tex. 2009); *see also Coleman v. Bank of New York Mellon*, ___ F. Supp. 2d ___, 2013 WL 4761111, at *11 (N.D. Tex. 2013) (Lynn, J.) (dismissing negligent misrepresentation claim where complaint was "conclusory and devoid of any factual content"); *In re Grizzly Mountain Aviation, Inc. v. McTurbine, Inc.*, 619 F. Supp. 2d 282, 288-89 (S.D. Tex. 2008) (finding plaintiff sufficiently pleaded negligent misrepresentation claim where complaint specifically alleged all four elements); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 646 (S.D. Tex. 2003) (noting plaintiff adequately alleged "the elements and supporting facts" to state a claim for negligent misrepresentation).

18

cause of action:

- "[T]he representations supplied false information for the guidance of [Plaintiffs] in its business" (¶ 65);
- "[Anthem] Defendants did not exercise reasonable care or competence in obtaining or communicating the information" (*Id.*);
- "Plaintiffs . . . would not have provided such services, but for the representations made by [Anthem] Defendants . . . . [and] [Plaintiffs] would show that it justifiably relied upon [Anthem] Defendants' representations that were made in the course of its business or in the transaction in which it had a pecuniary interest" (¶¶ 39, 65);
- "[Anthem] Defendants' negligent misrepresentations have resulted in damages and harm to the [Plaintiffs]" (¶ 65).

Plaintiffs' pleadings contain no factual allegations to support their claim that Anthem Defendants supplied false information and failed to exercise reasonable care in communicating the information. *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("[A] complaint, which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice.").

Other than the assertion that Anthem Defendants "wholly denied Plaintiffs' claims for payment or unilaterally reduced the amount of payment" after they "verified" that the patients and services were "covered," Plaintiffs do not provide factual allegations concerning what information was supplied to Plaintiffs or how the information was false, especially in light of Plaintiffs' assertion that they charged their usual and customary rates for the services. *See* Pls.' 1st Am. Compl. ¶¶ 37, 39, ECF No. 35. Plaintiffs must allege facts that permit the Court to infer more than the "mere possibility" that Anthem Defendants supplied false information. *Harold v. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). The First Amended Complaint and Claim Schedule are also devoid of factual allegations concerning how Anthem Defendants provided the information to Plaintiffs and whether they exercised reasonable care in communicating the information.

19

Plaintiffs' conclusory allegations and formulaic recitation of the elements of a claim for negligent misrepresentation does not raise Plaintiffs' right to relief above the speculative level. *See Twombly*, 550 U.S. at 555, 557. Without further factual enhancement the Court cannot reasonably infer that Anthem Defendants supplied false information for the guidance of Plaintiffs and that Anthem Defendants failed to exercise reasonable care in obtaining or communicating the information. *See Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013). Accordingly, the Court finds that Plaintiffs failed to plead sufficient facts to state a claim for negligent misrepresentation.

5.   Count IV-Promissory Estoppel

Plaintiffs' claim for promissory estoppel is similarly conclusory and devoid of well-pleaded factual allegations. To establish a cause of action for promissory estoppel, a plaintiff must show: (1) a promise; (2) foreseeability by the promisor that the promisee would rely on the promise; (3) substantial reliance by the promisee to his detriment; and (4) a definite finding that injustice can be avoided only by enforcement of the promise. *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999); *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 861 (Tex. App.—Tyler 2013, no pet.). Plaintiffs allege Anthem Defendants represented that they would pay Plaintiffs for services rendered to the patients, but breached these promises "by failing to pay and/or underpaying" on Plaintiffs' claims. Pls. 1st Am. Compl. ¶¶ 37, 68, ECF No. 35. Plaintiffs allege they reasonably and substantially relied on these representations to their detriment and their reliance was foreseeable to Anthem Defendants. *Id.* ¶ 68. Plaintiffs also allege "injustice can be avoided only [by] enforcing the [Anthem] Defendants' promises and representations," and note that the Claim Schedule illustrates their claims and damages sought. *Id.*

Anthem Defendants argue Plaintiffs failed to identify: (1) how reliance by Plaintiffs was

foreseeable to Anthem Defendants, (2) how actual reliance by Plaintiffs was reasonable, and (3) why injustice can be avoided only by enforcement of the alleged promise. Br. Supp. Mot. Dismiss 17, ECF No. 43-1. Plaintiffs again rely on the assertion that they are not required to outline each element of the claim and contend that the Claim Schedule sufficiently alleges facts to support the claim. *See* Br. Supp. Resp. Opp'n Mot. Dismiss 22, ECF No. 98. Plaintiffs, however, must allege enough facts that support the elements of the cause of action. *See Wilson v. Birnberg*, 667 F.3d at 595; *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d at 384. Plaintiffs' pleadings contain limited factual allegations regarding the promises made, *see* Pls.' 1st Am. Compl. ¶ 37, ECF No. 98, but Plaintiffs' conclusory allegations merely recite the elements of a promissory estoppel cause of action and do not allege sufficient facts regarding the remaining elements to raise their right to relief above the speculative level. *See* Pls.' 1st Am. Compl. ¶ 68, ECF No. 35 ("The Plaintiffs' reliance was foreseeable by [Anthem] Defendants and injustice can be avoided only [by] enforcing the . . . promises and representations."); *id.* ("Plaintiffs reasonably and substantially relied on the promises and representations of [Anthem] Defendants to their detriment."). Accordingly, the Court finds that Plaintiffs failed to state a claim for promissory estoppel.

### 6.    Plaintiffs' Motion for Leave to Amend

Anthem Defendants assert that Plaintiffs' "repeated failure to cure deficiencies by amendments . . . is a proper basis for this Court to deny Plaintiffs leave to amend." Anthem Defs.' Mot. Dismiss 19, ECF No. 43-1 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs contend, however, that Federal Rule of Civil Procedure 15(a)'s liberal standard requires the Court to grant leave to amend "when justice so requires." Pls.' Br. Supp. Resp. Opp'n Anthem Defs.' Mot. Dismiss 27, ECF No. 98. Accordingly, Plaintiffs request leave to amend their First Amended

21

Complaint to address any claims dismissed by the Court.

"Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (citing *Foman*, 371 U.S. at 181-82); *see also Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (noting Rule 15(a) "evinces a bias in favor of granting leave to amend") (internal quotation marks and citations omitted).   To determine whether to grant leave to amend, the Court considers five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.  *Smith*, 393 F.3d at 595 (citing *Foman*, 371 U.S. at 182; *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).   Courts should afford a claimant an opportunity to amend a complaint "[i]f it appears that a more carefully drafted pleading might state a claim upon which relief could be granted." *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 608 (N.D. Tex. 2006) (Fish, C.J.).  *Compare U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 558 n.18 (N.D. Tex. 2010) (O'Connor, J.) (denying leave to amend where "further amendment would be futile"), *with Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d at 693 (granting leave to amend because "it does not appear that [plaintiff's] . . . claims are patently frivolous or that an amendment could not cure their defects").

It appears that Plaintiffs may be able to state a claim upon which relief could be granted, and the Court notes that none of the above-mentioned five factors are present in this case.  Accordingly, the Court finds it appropriate to allow Plaintiffs an opportunity to amend their complaint.

## III.   BCBS ALABAMA'S MOTION TO COMPEL

BCBS Alabama filed a Motion to Compel Arbitration and for Dismissal of Certain Claims

22

(ECF No. 49), addressing Plaintiff Victory Medical Center Houston, L.P.'s ("Victory)" claims

relating to a patient, "SB," who is covered under a plan issued by BCBS Alabama.[10]   Victory seeks

to recover on its breach of contract claim against BCBS Alabama as an assignee of SB's rights.   *See*

Pls.' 1st Am. Compl. ¶¶ 62-63, ECF No. 35.   Victory also seeks to recover on its negligent

misrepresentation and promissory estoppel claims against BCBS Alabama for alleged representations

and promises regarding SB's coverage.   *See id.* ¶¶ 41, 65-66, 68; Victory's Br. Supp. Resp. BCBS

Alabama's Mot. Compel 6, ECF No. 74.   BCBS Alabama alleges that all of Victory's claims relating

to SB's plan are subject to a mandatory arbitration agreement under SB's Blue Cross Blue Shield

of Alabama Community Non Group Classic Blue Area 2 Contract ("Classic Contract") and moves

for an order compelling Victory to arbitrate these claims.   *See* Mot. Compel 1-2, ECF No. 49.

## A.    Legal Standard

The Federal Arbitration Act ("FAA") states that a written agreement "to submit to arbitration

an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable

. . . ."   9 U.S.C. § 2.   Section 2 evidences a "liberal federal policy favoring arbitration agreements,"

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), and "any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration."   *The Rice Co., S.A. v. Precious*

*Flowers Ltd.*, 523 F.3d 528, 534 (5th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).   The FAA allows a party "aggrieved by the alleged failure,

---

[10]    Pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), BCBS
Alabama refers to the individual patient as "SB."   BCBS Alabama Mot. Dismiss 1 n.2, ECF No. 49.   BCBS
Alabama joined BCBS Defendants' Motion to Dismiss (ECF No. 48), but filed the instant motion to
specifically address Victory's claims that relate to SB's plan.   *Id.* at 1 n.1.   SB's plan is not subject to ERISA
and Plaintiffs only assert FEHBA claims against HCSC.   *See id.*; Pls.' 1st Am. Compl. ¶¶ 55-59, ECF No.
35.   Accordingly, the only causes of action asserted by Victory against BCBS Alabama relating to SB's plan
are for breach of contract, negligent misrepresentation, and promissory estoppel.

neglect or refusal" of an opposing party to arbitrate under a written arbitration agreement to enforce the agreement by filing a motion to compel arbitration.  9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

Courts conduct a two-step inquiry to determine whether a party should be compelled to arbitrate.  *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007).  First, courts must determine whether the parties agreed to arbitrate the dispute by considering: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)) (internal quotation marks omitted).  If the parties agreed to arbitrate, courts then determine "whether any federal statute or policy renders the claims nonarbitrable."  *JP Morgan Chase*, 492 F.3d at 598 (quoting *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)) (internal quotation marks omitted).  The parties do not address the second step of the inquiry and do not point to any "legal constraint external to the parties' agreement" that forecloses arbitration.  *See OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 446 (5th Cir. 2001) (internal quotation marks and citations omitted).  Accordingly, the Court will focus on whether the parties agreed to arbitrate the dispute.

### B.    Analysis

BCBS Alabama asserts that on or around October 12, 2011, SB received medical services from Victory and the total charge for the services was $13,362.60.  Mot. Compel 3, ECF No. 49.  BCBS Alabama paid Victory $7,634.15.  *Id.*  BCBS Alabama contends Victory's breach of contract,

negligent misrepresentation, and promissory estoppel claims against BCBS Alabama relating to SB are subject to a binding arbitration provision in SB's plan. *Id.* at 4.

### 1.    Is There a Valid Agreement to Arbitrate?

The Court must first determine whether there is a valid agreement to arbitrate.   BCBS Alabama must establish that an arbitration agreement exists. *ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co.*, 188 F.3d 307, 311 (5th Cir. 1999).   To determine whether an agreement to arbitrate exists, courts apply ordinary state-law contract principles. *Will-Drill Res.*, 352 F.3d at 214 (internal quotation marks and citations omitted).   "Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration."[11] *In re Online Travel Co.*, ___ F. Supp. 2d ___, 2013 WL 2948086, at *2 (N.D. Tex. 2013) (Boyle, J.) (internal citations omitted).   Whether a contract has been formed is determined by the "objective standard of what the parties said and how they acted, not by their subjective state of mind." *Motten v. Chase Home Fin.*, 831 F. Supp. 2d at 1003 (internal

---

[11] Victory's breach of contract, negligent misrepresentation, and promissory estoppel claims against BCBS Alabama relating to SB's plan are state law claims and the Court's jurisdiction is based on diversity. *See* Pls.' 1st Am. Compl. ¶ 35 (citing 28 U.S.C. §§ 1331, 1332). Therefore, Texas choice-of-law rules apply. *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001). Both parties in their briefing assume Texas law applies to Victory's claims against BCBS Alabama, and neither party argues the application of any other state's laws. *See generally* Mot. Compel, ECF No. 49; Br. Supp. Resp. Mot. Compel, ECF No. 74; Reply, ECF No. 99. The Court assumes, without deciding, that Texas law governs. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999).

The Court notes that federal courts in Alabama also consider whether a valid agreement to arbitrate exists and whether the dispute falls within the scope of the agreement when determining whether parties agreed to arbitrate a dispute. *See King v. Cintas Corp.*, 920 F. Supp. 2d 1263, 1267 (N.D. Ala. 2013). Furthermore, the elements for the formation of a valid contract under Alabama law are similar to those under Texas law. *See Cook v. Talladega Coll.*, 908 F. Supp. 2d 1214, 1223 (N.D. Ala. 2012) ("[T]he requisite elements of a contract, generally include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.") (quoting *Strength v. Ala. Dep't of Fin.*, 622 So.2d 1283, 1289 (Ala. 1993)) (internal quotation marks omitted).

citations omitted).

Victory only challenges whether there was mutual assent between SB and BCBS Alabama.[12] *See* Br. Supp. Resp. Mot. Compel 6-7, ECF No. 74.  Mutual assent is a required element to the formation of an enforceable contract.  *Teitel v. Univ. of Hous. Bd. of Regents*, 285 F. Supp. 2d 865, 877 (S.D. Tex. 2002); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).  "Typically, a party manifests its assent by signing an agreement."  *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013); *see also I.C.E. Contractors, Inc. v. Martin & Cobey Constr. Co.*, 58 So.3d 723, 725 (Ala. 2010) ("The purpose of a signature on a contract is to show mutual assent.") (internal quotation marks and citations omitted).

BCBS Alabama withheld SB's application from its motion because the application contained patient-identifying information, but provided Victory with a copy of SB's application.  *See* Mot. Compel 5 n.6, 10, ECF No. 49.  BCBS Alabama attached a form application to its motion and an affidavit from its Direct Billing Manager stating that the form application is a "true and correct copy of a form application for coverage" under the Classic Contract that was "in use at the time SB

---

[12]   Victory, as a non-signatory plaintiff, does not allege that it is not bound by the arbitration provision, and an arbitration clause is enforceable if it is "in writing and signed by the party invoking it." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).  A non-signatory plaintiff may be compelled to arbitrate under six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *see also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356-65 (5th Cir. 2003) (discussing theories for binding non-signatory to arbitration agreement); *Ace Am. Ins. Co. v Huntsman Corp.*, 255 F.R.D. 179, 191-208 (S.D. Tex. 2008) (same); *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365-73 (S.D. Tex. 2006) (discussing "whether a party to a contract containing an arbitration clause may enforce that clause against a nonparty").  Neither party raised this issue and, therefore, the Court will not examine it in depth.  The Court notes, however, that Victory bases its claims on its status as an assignee of the benefits due under SB's plan and on BCBS Alabama's representations regarding the benefits due under SB's plan.  *See generally* Pls.' 1st Am. Compl., ECF No. 35.  Furthermore, the arbitration provision in SB's plan specifically includes "any claim that involves any relationships that result from or relate in any way to the plan (including claims involving persons or organizations who are not parties to the plan)."  Mot. Compel Ex. C (Contract Booklet), App. at 47, ECF No. 49-3.

applied for coverage and identical to the form completed by SB." Mot. Compel Ex. 1 (Oliver Aff.), App. at 3, ECF No. 49-1. BCBS Alabama also attached "a true and correct copy of the [Classic Contract] contract booklet, issued to SB subsequent to the inception of coverage . . . ." *Id.* BCBS Alabama subsequently submitted an unredacted copy of SB's application to the Court that contains SB's signature. *See* Sealed Appl. 5, ECF No. 134; *see also id.* at 2 ("Attached to this affidavit is a record from [BCBS Alabama] consisting of . . . an Individual Blue Application for Health Coverage signed by S.B. [that is] kept by [BCBS Alabama] in the regular course of business.").

The signature block on SB's application states: "I acknowledge by my signature that I have read and understand the front and back of this application and agree to **binding arbitration** as described on the back of this page." *Id.* at 2. The back of the application states that "any disagreement will be settled by arbitration—not a court" and the insured "agree[s] to settle any disagreement by arbitration instead of a court trial." Mot. Compel Ex. 2 (Form Appl.), App. at 5, ECF No. 49-2. The application also provides that the insured "agree[s] to the arbitration provisions in the contract" and "voluntarily surrender[s] [the] right to have any disagreement . . . resolved in court." *Id.* The contract booklet states "in consideration of coverage under the plan and payment of premiums, you (and we) agree that any one or more of the following claims . . . shall be resolved by final and binding arbitration." Mot. Compel Ex. 3 (Contract Booklet), App. at 47, ECF No. 49-3 (emphasis omitted). The arbitration agreement covers, among other disputes, "any claim that arises out of or relates to the plan," and "is intended to have the broadest scope permissible by law." *Id.*

"[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract."

27

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (internal quotation marks and citations omitted); *see also Overstreet v. Contigroup Cos.*, 462 F.3d 409, 412 (5th Cir. 2006) (noting party resisting arbitration "shoulders the burden of proving that the dispute is not arbitrable") (citing *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003)).  Victory has failed to present evidence to rebut BCBS Alabama's contention that a valid agreement exists. *Compare Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537-39 (5th Cir. 2003) (finding sufficient evidence to indicate arbitration agreements were invalid where party opposing arbitration was illiterate and contended he did not know he was signing arbitration agreements and defendant failed to inform the man what he was signing), *and Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940 (S.D. Tex. 2001) (finding substantial evidence arbitration agreements were unconscionable where plaintiffs could not read English and documents were not translated for them, and superiors told them to quickly sign documents to get back to work), *with Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 344-45 (S.D. Tex. 2008) (finding arbitration provision valid because employee signed and initialed agreement and arbitration provisions and presented no argument that she was unaware she was signing an arbitration agreement); *see also Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1319-21 (S.D. Ala. 2007).

BCBS Alabama has made the prima facie showing necessary to compel arbitration and Victory has not offered any evidence to establish that the SB's arbitration provision is unenforceable. *See Overstreet*, 462 F.3d at 412; *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 994 (S.D. Tex. 2011).  Accordingly, the Court finds that a valid agreement to arbitrate exists.

2.      Is the Dispute Within the Scope of the Agreement?

Finding that a valid agreement exists, the Court must next determine whether Victory's

28

claims regarding services provided to SB fall within the scope of the arbitration agreement. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d at 598. SB's plan contained an arbitration provision that was intended to settle "any disagreement" between the parties. Mot. Compel Ex. 2 (Form Appl.), App. at 5, ECF No. 49-2. "In consideration of coverage under the plan and payment of premiums," SB and BCBS Alabama agreed that their arbitration agreement, which was "intended to have the broadest scope permissible by law," covered:

- "Any claim that arises out of or relates to the plan;"
- "Any claim that involves any relationships that result from or relate in any way to the plan (including claims involving persons or organizations who are not parties to the plan);"
- "Any claim that alleges any conduct by you or us, regardless of whether related to the plan;" or
- "Any claim that concerns the validity, enforceability, scope, or any other aspect of this arbitration provision."

Mot. Compel Ex. 3 (Contract Booklet), App. at 47, ECF No. 49-3.

### a.      *Breach of Contract*

Victory's only argument against compelling arbitration of its breach of contract claim is its assertion that BCBS Alabama failed to provide evidence of a valid agreement between the parties. *See* Br. Supp. Resp. Opp'n Mot. Compel 6-7, ECF No. 74. Victory seeks to recover for the "underpayment . . . of reimbursement amounts pursuant to the terms" of SB's plan and alleges BCBS Alabama "materially breached the terms" of the plan by "refusing to pay [Victory] the contractually agreed upon amounts . . . ." Pls.' 1st Am. Compl. ¶¶ 41, 62-63, ECF No. 35. Victory alleges SB assigned "all right, title and interest" in benefits "due under the [plan]." *Id.* ¶ 62. BCBS Alabama's contract booklet explains that the arbitration agreement applies to "any claim that arises out of or relates to the plan." Mot. Compel Ex. 3 (Contract Booklet), App. at 47, ECF No. 49-3 (emphasis

omitted). Accordingly, the Court finds that Victory's breach of contract claim is within the scope of the arbitration agreement.

### b.    Negligent Misrepresentation and Promissory Estoppel

Victory contends that its claims for negligent misrepresentation and promissory estoppel are claims against BCBS Alabama for representations and promises made directly to Victory, and not brought by Victory as an assignee of SB's benefits.  *See* Br. Supp. Resp. Opp'n Mot. Compel 7, ECF No. 74.  Therefore, Victory asserts that these claims do not arise out of or relate to the plan and do not fall within the scope of the agreement.  *Id.* at 8-10.

To determine whether a dispute falls within the scope of an arbitration agreement, courts must determine whether the arbitration clause is "broad" or "narrow."  *Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d 368, 374 (S.D. Tex. 2003) (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).  Arbitration provisions that expressly encompass disputes "related to" the agreement containing the provision are construed broadly.  *I.D.E.A. Corp. v. WC&R Interests, Inc.*, 545 F. Supp. 2d 600, 606 (W.D. Tex. 2008) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)); *see also Jureczki*, 252 F. Supp. 2d at 374-75 (discussing examples of "broad clauses" and "narrow clauses").  Broad arbitration clauses are "not limited to claims that literally 'arise under the contract,' but rather embrace[] all disputes between the parties having a significant relationship to the contract."  *I.D.E.A. Corp.*, 545 F. Supp. 2d at 606 (quoting *Pennzoil Exploration*, 139 F.3d at 1067) (internal quotation marks omitted).  Furthermore, "[i]n determining whether the dispute falls within the scope of the arbitration agreement, 'ambiguities . . . [are] resolved in favor of arbitration.'"  *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d at 1073 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford*

*Junior Univ.*, 489 U.S. 468, 475 (1989)); *see also Sherer v. Green Tree Serv. LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 538 (N.D. Tex. 2003) (Godbey, J.).

Here, Victory's negligent misrepresentation claim is based on BCBS Alabama's representations that the patients "were covered under healthcare plans and . . . that the medical services . . . were likewise covered under the terms of the policies." Pls.' 1st Am. Compl. ¶ 65, ECF No. 35; *see also id.* ¶ 66 ("[BCBS Alabama] . . . misrepresented the patients['] coverage under the healthcare policies."). Victory's promissory estoppel claim is based on BCBS Alabama's failure "to pay and/or underpaying the claims submitted by [Victory]" after BCBS Alabama represented that they would pay for services provided to SB. *Id.* ¶ 68. In general, Victory's negligent misrepresentation and promissory estoppel claims seek to recover for "underpayment . . . of reimbursement amounts pursuant to the terms of [SB's] plan[]." *Id.* ¶ 41. The arbitration provision applies to "any claim that arises out of or relates to the plan," "any claim that involves any relationships that result from or relate in any way to the plan (including claims involving persons or organizations who are not parties to the plan," and "any claim that alleges any conduct by you or us, regardless of whether related to the plan." Mot. Compel Ex. 3 (Contract Booklet), App. at 47, ECF No. 49-3 (emphasis omitted). It is not necessary for these claims to arise out of SB's plan to be arbitrable—the claims only need to "relate[] to" SB's plan, involve a relationship that "result[s] from or relate[s] to" SB's plan, or "allege[] any conduct by [BCBS Alabama]." *See Pennzoil Exploration*, 139 F.3d at 1068; *see also Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (quoting *Pennzoil*, 139 F.3d at 1067) (noting dispute is arbitrable under broad clause if it has "'a significant relationship to the contract'"). Victory's claims clearly arise out of and relate to SB's plan, involve

31

a relationship between Victory and BCBS Alabama that resulted from and related to the plan, and allege conduct by BCBS Alabama. Accordingly, the Court finds that Victory's negligent misrepresentation and promissory estoppel claims are within the scope of the arbitration agreement.

### 3. Stay or Dismissal

District courts must stay a suit containing issues that are referable to arbitration under a written agreement to arbitrate until the arbitration "has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The statute, however, is not intended to limit dismissal of a case in the proper circumstances. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Courts may dismiss a case if "retaining jurisdiction and staying the action will serve no purpose." *Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d at 380 (quoting *Dean Witter*, 975 F.2d at 1164) (internal quotation marks omitted); *see also ST Int'l Business Ins. Co. Ltd. v. Energy Future Holdings Corp.*, 539 F. Supp. 2d 871, 878 (N.D. Tex. 2008) (Lindsay, J.). The Fifth Circuit has found that dismissal of a suit is appropriate "'when *all* of the issues raised in the district court must be submitted to arbitration.'" *Dean Witter*, 975 F.2d at 1164.

BCBS Alabama contends that Victory's claims against BCBS Alabama relating to SB's plan should be dismissed because all of the claims are subject to the arbitration agreement. Mot. Compel 8, ECF No. 49. Victory argues that dismissal is improper because (1) Victory maintains causes of action against BCBS Alabama relating to SB that are not subject to the arbitration agreement, (2) Victory maintains causes of action against BCBS Alabama for other patients, and (3) Victory maintains causes of action against other named Defendants that are unrelated to the arbitration agreement. Br. Supp. Resp. Opp'n Mot. Compel 11, ECF No. 74. Having found that Victory's causes of action against BCBS Alabama relating to SB's plan are subject to a valid arbitration

32

agreement, the Court finds that Victory's first objection lacks merit.  The Court also finds that Victory's other arguments lack merit.

Victory contends that not all of the issues raised in this case are subject to the arbitration agreement because Victory maintains causes of action outside of those related to SB's plan.  *See id.* It may be appropriate, however, to dismiss all of the claims subject to a valid arbitration agreement if the claims relate to specific parties subject to the agreement and retaining jurisdiction serves no useful purpose.  *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, ___ F. Supp. 2d ___, 2013 WL 4516472, at *12 (D. Md. 2013) (dismissing claims of class members that were subject to enforceable arbitration clauses finding "no useful purpose will be served by staying the pertinent proceedings pending arbitration"); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940-41 (S.D. Tex. 2001) (compelling plaintiff that failed to respond to defendant's motion to compel to arbitrate after finding arbitration agreements were unconscionable as to five other plaintiffs; determining it was unnecessary to stay the claims brought by the five plaintiffs during arbitration of one plaintiff's claims).  Here, all of Victory's claims against BCBS Alabama relating to SB are arbitrable and Victory has not identified a reason for the Court to maintain jurisdiction over these claims, and therefore, a stay of the action is unwarranted.  *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 784 (N.D. Tex. 2012) (Lindsay, J.).  Accordingly, the Court finds that dismissing Victory's claims against BCBS Alabama relating to SB's plan is appropriate.

## IV.   CAPITAL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Capital filed a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2), and Alternatively, Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3), and Alternatively, Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6) (ECF

No. 52), filed October 1, 2012.[13]  Capital provides medical health insurance coverage to individuals

and groups in twenty-one counties in central Pennsylvania and the Lehigh Valley.  Capital's Mot.

Dismiss Ex. A (Bretz Decl.), App. at 4, ECF No. 52-2.  Capital insured three patients that assigned

their rights to benefits under their health benefit plans to Victory and received medical services from

Victory.  *See* Pls.' 1st Am. Compl. ¶38, ECF No. 35; Pls.' 1st Am. Compl. Ex. A (Claim Schedule),

App. at 25, ECF No. 35-1.  Capital does not contract with Plaintiffs and states that Plaintiffs' claims

against Capital relate to these three insurance contracts that were contracted and issued in

Pennsylvania.  Mot. Dismiss Ex. A (Bretz Decl.), App. at 5, ECF No. 52-2.  Plaintiffs allege Capital

is an insurance company "believed to be doing business in the State of Texas."  Pls.' 1st Am. Compl.

¶ 26, ECF No. 35.  Capital, however, contends that it restricts its business to its twenty-one county

service area in Pennsylvania and is thus not subject to the Court's personal jurisdiction.  Mot.

Dismiss 6, ECF No. 52-1.  Accordingly, Capital moves to dismiss Plaintiffs' claims against it for

lack of personal jurisdiction.

### A.      Legal Standard

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction,

the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 773 (N.D. Tex. 2008) (Fitzwater, C.J.)

(quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)) (internal quotation marks

omitted).  A plaintiff need only make a *prima facie* case that personal jurisdiction exists when the

---

[13]   Capital and Capital Advantage Insurance Company, a wholly-owned subsidiary of Capital, specially appeared to contest the Court's personal jurisdiction.  Capital's Mot. Dismiss 1, ECF No. 52. Capital Advantage Insurance Company issued the contract at issue in this case, but is not a named party.  Br. Supp. Mot. Dismiss 5, ECF No. 52-1; *see also* Pls.' 1st Am. Compl. ¶ 26, ECF No. 35.  The Court will only refer to Capital.

34

court considers a motion to dismiss for lack of jurisdiction without holding an evidentiary hearing or in the absence of jurisdictional discovery.  *See Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343-44 (5th Cir. 2002); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 353 (S.D. Tex. 2011).  The court must accept jurisdictional allegations in the complaint as true, but the court need not credit conclusory allegations, even if uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001) (per curiam).  When determining whether personal jurisdiction exists, courts may consider "the contents of the record at the time of the motion, including affidavits."  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (internal quotation marks and citations omitted); *see also First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 655 (N.D. Tex. 2008) (Godbey, J.).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution."  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnote omitted).  Texas's long-arm statute extends to the limits of federal due process; therefore, the Court need only consider whether the exercise of jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment.  *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 756 (N.D. Tex. 2009) (Fitzwater, C.J.); *see also Latshaw*, 167 F.3d at 211 ("As the Texas long-arm statute extends to the limits of federal due process, these two steps conflate.") (footnotes omitted).

The exercise of personal jurisdiction comports with due process when "first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to

submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *E.g.*, *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (internal citations omitted).   A nonresident defendant has such minimum contacts if he "purposefully availed himself of the benefits and protections of the forum state . . . such that he should reasonably anticipate being haled into court in the forum state." *Latshaw*, 167 F.3d at 211 (footnotes and internal quotation marks omitted).

These minimum contacts give rise to either general or specific personal jurisdiction. *See TGI Friday's*, 652 F. Supp. 2d at 756 (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)).   For general jurisdiction, a plaintiff must establish that the defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).   "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (internal quotation marks and citations omitted).   The exercise of specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop*, 131 S. Ct. at 2851 (internal quotation marks and citations omitted).   Under either type of personal jurisdiction, a court must find that the defendant "purposefully established 'minimum contacts' in the forum [s]tate." *Seghers v. El Bizri*, 513 F. Supp. 2d 694, 701-02 (N.D. Tex. 2007) (Fish, C.J.) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (internal quotation marks omitted).

If the plaintiff establishes that the nonresident defendant has the requisite minimum contacts, courts must determine whether the exercise of jurisdiction over the defendant satisfies traditional

notions of fair play and substantial justice. *See Companion Prop. & Cas.*, 723 F.3d at 559 (citing

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)).   To determine whether the

exercise of jurisdiction satisfies traditional notions of fair play and substantial justice, courts balance

"the burden on the defendant having to litigate in the forum; the forum state's interest in the lawsuit;

the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient

resolution of controversies; and the states's shared interest in furthering fundamental social policies."

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (internal citations omitted); *see*

*also TGI Friday's*, 652 F. Supp. 2d at 756 (quoting *Berry v. Lee*, 428 F. Supp. 2d 546, 557 (N.D.

Tex. 2006) (Fitzwater, J.)).

      **B.**      **Analysis**

            1.      <u>General Personal Jurisdiction</u>

      To establish general jurisdiction, a nonresident defendant's contacts with the forum state

"must be substantial; random, fortuitous, or attenuated contacts are not sufficient."   *Choice*

*Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (internal

citation omitted).  This "continuous and systematic contacts test" is difficult to meet and requires

"extensive contacts" between a defendant and a forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523

F.3d 602, 609 (5th Cir. 2008) (internal quotation marks and citation omitted).  A nonresident

defendant's contacts must "demonstrate a business presence in Texas," and the Fifth Circuit has

emphasized the distinction between "doing business *with* Texas . . . [and] doing business *in* Texas."

*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Jackson*

*v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010); *Johnston*, 523 F.3d at 611; *Am.*

*Univ. Sys., Inc. v. Am. Univ.*, 858 F. Supp. 2d 705, 713 (N.D. Tex. 2012) (Lindsay, J.).

Plaintiffs must plead sufficient jurisdictional facts to make a prima facie showing that Capital has continuous and systematic contacts with Texas. *See Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 672 (N.D. Tex. 2008) (Lindsay, J.) (noting plaintiff bears burden of establishing prima facie case for court's jurisdiction over nonresident defendant); Br. Supp. Resp. Mot. Dismiss 6, ECF No. 80 (same) (citing *Johnston*, 523 F.3d at 609).  The only jurisdictional facts in Plaintiffs' pleadings are the three alleged payments to Plaintiffs on August 25, 2011, June 5, 2012, and June 6, 2012, and Plaintiffs' assertion that Capital is "believed to be doing business in the State of Texas." *See* Pls.' 1st Am. Compl. ¶ 26, ECF No. 35; Pls.' 1st Am. Compl. Ex. 1 (Claim Schedule), App. at 25, ECF No. 35-1.  The Fifth Circuit has found general personal jurisdiction lacking in instances where a defendant's contacts with the forum state were significantly more substantial than Capital's. *See, e.g.*, *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d at 368 (finding nonresident defendant that made fifty-three payments over three years in forum state was not subject to general personal jurisdiction); *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding defendant's contacts with Texas were "not substantial enough to justify subjecting [defendant] to suit in . . . Texas," even though defendant had federal operating authority in Texas, routinely shipped goods in and out of Texas, and regularly sent salesmen to Texas); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373-76 (5th Cir. 1987) (finding court lacked general personal jurisdiction over nonresident defendant that sold over $250 million of products to customers in Texas over five years); *Am. Bank, F.S.B. ex rel. Am. Premium Fin. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, No. 4:10-cv-331-A, 2010 WL 3784282, at *5-7 (N.D. Tex. Sept. 27, 2010) (McBryde, J.) (finding court lacked general personal jurisdiction over defendant that was licensed in Texas, issued and collected premiums on insurance policies in Texas, paid claims in Texas, and hired Texas

38

attorneys); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, 415-19 (1984) (finding general personal jurisdiction lacking over nonresident defendant that purchased over $4 million in parts in six years from Texas company, sent prospective pilots to Texas for training, and received $5 million drawn upon Texas bank). Plaintiffs do not allege any facts that typically support general jurisdiction, such as maintaining offices or property in Texas, stationing employees in Texas, maintaining bank accounts in Texas, or paying Texas taxes. *See, e.g.*, *Companion Prop. & Cas. Ins. Co.*, 723 F.3d at 560; *Choice Healthcare*, 615 F.3d at 368; *Cent. Freight Lines*, 322 F.3d at 381; *Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994); *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 773 (N.D. Tex. 2007) (Lindsay, J.). Accordingly, Plaintiffs' allegations fail to meet their burden of establishing that Capital has the continuous and systematic contacts with Texas necessary to justify the Court's exercise of general personal jurisdiction.

Furthermore, Capital included a sworn declaration from its Vice President for Account Management, Commercial Markets, Therese A. Bretz ("Bretz"), describing Capital's business activities.[14]  *See* Mot. Dismiss Ex. A (Bretz Decl.), App. at 4-5, ECF No. 52-2. Bretz noted that

---

[14] Plaintiffs assert Bretz's Declaration is not properly authenticated as a business records affidavit pursuant to Federal Rule of Evidence 901. Br. Supp. Resp. Mot. Dismiss 7, ECF No. 80. Business records affidavits are used to authenticate evidence prior to admission. *See* Fed. R. Civ. P. 901; *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008); *Sparks v. Reneau Pub. Inc.*, 245 F.R.D. 583, 587-88 (E.D. Tex. 2007). Bretz's Declaration is not attempting to authenticate Capital's business records; Bretz's Declaration is a sworn statement that explains her knowledge of Capital's business.

Furthermore,"a business record affidavit . . . requires only that the affiant have 'personal knowledge to testify as custodian of documents' and 'personal knowledge as to some of the statements in the affidavit.'" *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (quoting *FSLIC v. Griffin*, 935 F.2d 691, 702 (5th Cir. 1991)). Bretz stated that "[t]he statements made in this declaration are based on my personal knowledge and my review of [Capital's] business records." Mot. Dismiss Ex. A (Bretz Decl.), App. at 4, ECF No. 52-2. As Capital's Vice President for Account Management, it is reasonable to infer that Bretz has knowledge of the information contained in her Declaration. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)) ("Personal knowledge may be demonstrated by showing that the

Capital only provides insurance coverage to people and groups that reside or have their headquarters within Capital's twenty-one county service area in Pennsylvania. *Id.* at 4. Bretz also stated that Capital (1) does not own property or employ any persons in Texas, (2) does not maintain any bank accounts or pay taxes in Texas, (3) is not licensed to do business in Texas, and (4) does not solicit business in Texas. *Id.* at 5. Bretz asserted that Capital does not contract with Plaintiffs or hospitals or medical facilities in Texas and states that Plaintiffs are non-participating providers and Capital does not encourage or advise their members to seek treatment from non-participating providers. *Id.*

Plaintiffs apparently concede that Capital does not have the required business presence in Texas for the Court to exercise general jurisdiction. Rather than contesting or presenting evidence to rebut Capital's assertions, Plaintiffs request that the Court permit jurisdictional discovery to allow Plaintiffs to "meet their jurisdictional burden." Br. Supp. Resp. Mot. Dismiss 8, ECF No. 80; *see also Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 797 (N.D. Tex. 2010) (McBryde, J.) (stating plaintiff "apparently concedes" defendant lacked sufficient contacts where plaintiff responded to motion to dismiss by requesting jurisdictional discovery). Accordingly, the Court finds that Plaintiffs' allegations are not sufficient to show Capital maintained continuous and systematic contacts with Texas to support the exercise of general personal jurisdiction.

2.   Specific Personal Jurisdiction

Courts may exercise specific jurisdiction if a nonresident defendant "purposefully avails himself of the privileges of conducting activities in the forum state" and "the controversy arises out of or is related to the defendant's contacts with the forum state." *Choice Healthcare*, 615 F.3d at

---

facts stated 'reasonably' fall within the 'sphere of responsibility' of the affiant as a corporate employee."); *see also Diamond Offshore Co. v. Survival Sys. Int'l, Inc.*, 902 F. Supp. 2d 912, 932 (S.D. Tex. 2012).

369 (internal citation omitted).  The Fifth Circuit has held that an insurer's payment of a limited

number of claims to a medical services provider for treatment of the insurer's members, "based on

the unilateral decision of those insureds who sought treatment in [the forum state]," does not qualify

as commercial activity purposefully directed at the forum state.[15] *Id.* at 369-70; *see also Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Am. Bank, F.S.B.*, 2010 WL 3784282, at *4.

Accordingly, payments made after an insurer's members obtain medical services unrelated to the

insurer's marketing scheme are not an attempt to purposefully direct commercial activity at the

forum state and do not establish purposeful contact between the nonresident defendant and the forum

state.  *Choice Healthcare*, 615 F.3d at 370, 373-74; *see also Freudensprung v. Offshore Tech. Servs.,*

*Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]he combination of mailing payments to the forum state,

engaging in communications related to the execution and performance of the contract, and the

existence of a contract between the nonresident defendant and a resident of the forum are insufficient

to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction

over the nonresident defendant.") (internal citations omitted).

Here, Plaintiffs' claims arise from Capital's three payments to Plaintiffs for medical services

provided to Capital's members.  *See* Br. Supp. Mot. Dismiss 10-11, ECF No. 52-1; Pls.' 1st Am.

Compl. Ex. A (Claim Schedule), App. at 25, ECF No. 35-1.  Plaintiffs' allegations consist of the

---

[15] The Fifth Circuit also found that a non-resident insurer that belonged to a national membership and received in-state health care provider's rates offered to members had not purposefully availed itself of the benefits and privileges of the forum state.  *Choice Healthcare*, 615 F.3d at 371-72 (citing *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, No. 08-1870, 2009 WL 47125 (S.D. Tex. Jan. 6, 2009); *Resolution Trust Corp. v. First of Am. Bank*, 796 F. Supp. 1333 (C.D. Cal. 1992)).  Specific personal jurisdiction does not exist where the non-resident insurer does not contract directly with an entity in the forum state and there is "no [forum state] contract, a contract between the parties, or a substantial connection to [the forum state]."  *Id.* at 371 (quoting *St. Luke's Episcopal Hosp.*, 2009 WL 47125, at *9); *see also Resolution Trust Corp.*, 796 F. Supp. at 1337.

Claim Schedule showing three claims against Capital, Plaintiffs' assertion that it believes Capital does business in Texas, and its request for jurisdictional discovery to "establish jurisdiction over [Capital]." *See* Br. Supp. Resp. Mot. Dismiss 8, ECF No. 80; Pls.' 1st Am Compl. ¶ 26, ECF No. 35; Pls.' 1st Am. Compl. Ex. A (Claim Schedule), App. at 25, ECF No. 35-1.  Plaintiffs, however, do not plead facts showing that Capital purposefully directed its commercial activities at Texas. *See Clemens v. McNamee*, 615 F.3d at 379; *Choice Healthcare*, 615 F.3d at 372.  Plaintiffs also do not attempt to rebut Capital's assertions that Plaintiffs' pleadings are devoid of facts to support such a finding. *See* Br. Supp. Resp. Mot. Dismiss 7-8, ECF No. 80; *see also Bell Helicopter Textron*, 729 F. Supp. 2d at 797-98.  Furthermore, nowhere in Plaintiffs' pleadings are there allegations that Capital's contacts with Texas arose from a decision by Capital to direct its commercial activity at Texas rather than Capital's members' independent decisions to travel to Texas to receive medical services.  Br. Supp. Mot. Dismiss 12, ECF No. 52-1; Mot. Dismiss Ex. A (Bretz Decl.), App. at 4-5, ECF No. 52-2; *see also Burger King Corp.*, 471 U.S. at 475; *Choice Healthcare*, 615 F.3d at 369-70.

Capital also provided evidence that it only provides insurance coverage for individuals and groups within Capital's twenty-one county service area in Pennsylvania and does not contract with hospitals or medical facilities in Texas.  Mot. Dismiss Ex. A (Bretz Decl.), App. at 4-5, ECF No. 52-2.  Capital asserts that Plaintiffs are non-participating providers without a contract with Capital, and Capital "do[es] not encourage or advise their members to seek treatment from non-participating providers." *Id.* at 5.  Capital also states that any coverage provided to members that seek treatment from non-participating providers "is not intended to expand sales or otherwise develop commercial activity in the forum state" where the non-participating provider is located. *Id.*  Capital also contends that it made the three payments because of Capital's members' "respective decisions to seek care

from Plaintiffs . . . in Texas." Br. Supp. Mot. Dismiss 12, ECF No. 52-1. Accordingly, the Court finds that it cannot exercise specific personal jurisdiction over Capital.

3.   <u>Limited Jurisdictional Discovery</u>

Plaintiffs assert that the Court should grant Plaintiffs an opportunity to conduct jurisdictional discovery to establish personal jurisdiction over Capital. Br. Supp. Resp. Mot. Dismiss 8, ECF No. 80. Plaintiffs contend that jurisdictional discovery is appropriate if the existing record is "inadequate to support personal jurisdictional and the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery." *Id.* (citing *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005)). The Fifth Circuit, however, has held that jurisdictional discovery is only appropriate after a plaintiff has made a preliminary showing of jurisdiction. *See, e.g.*, *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 755 n.8 (5th Cir. 2012); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); *Fairchild v. Barot*, 946 F. Supp. 2d 573, 578 (N.D. Tex. 2013) (Lynn, J.); *see also Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 588 n.41 (E.D. La. 2013) (noting party must provide basis for court to authorize jurisdictional discovery); *Bell Helicopter Textron*, 729 F. Supp. 2d at 798 (stating courts need not allow plaintiffs "to conduct a fishing expedition seeking facts to support a claim of general jurisdiction") (internal citations omitted).

Plaintiffs' pleadings are devoid of factual allegations that reasonably suggest that personal jurisdiction exists over Capital. *Fielding*, 415 F.3d at 429 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *see also First Inv. Corp.*, 703 F.3d at 755 n.8 (noting party must allege facts "that, if true, would establish jurisdiction" to be entitled to jurisdictional discovery) *Fairchild*, 946 F. Supp. 2d at 578 (denying request for jurisdictional discovery where plaintiff failed

43

to provide "colorable basis for jurisdiction") (internal citation omitted).  As noted, the only facts alleged by Plaintiffs are the three payments made in Texas based on Capital's members' decisions to seek medical treatment in Texas.  *See generally* Pls.' 1st Am. Compl., ECF No. 35.  Plaintiffs fail to plead any facts to suggest that Capital had continuous and systematic contacts with Texas or purposefully availed itself of the privilege of conducting activities in Texas.

Furthermore, Plaintiffs have not alleged that jurisdictional discovery will support a finding of personal jurisdiction, nor do they contest Capital's assertions regarding personal jurisdiction; rather, Plaintiffs essentially concede that personal jurisdiction does not exist by requesting jurisdictional discovery to allow them to "meet their jurisdictional burden" and "establish jurisdiction over [Capital]."  *See* Br. Supp. Resp. Mot. Dismiss 5-8, ECF No. 80; *see also Bell Helicopter Textron*, 729 F. Supp. 2d at 797.  Plaintiffs also do not allege that Capital's motion raises questions of fact concerning personal jurisdiction.  *See Paolino v. Argyll Equities, L.L.C.*, 401 F. Supp. 2d 712, 723 (W.D. Tex. 2005) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)) (stating jurisdictional discovery "need not be permitted unless the motion to dismiss raises issues of fact") (internal quotation marks and citations omitted).  Accordingly, the Court finds that Plaintiffs have failed to meet their burden of showing that they are entitled to jurisdictional discovery.

4.   <u>Improper Venue and Failure to State a Claim</u>

Finding that it lacks personal jurisdiction over Capital, the Court need not address Capital's Motion to Dismiss for Improper Venue or Motion to Dismiss for Failure to State a Claim.

## VIII.   CONCLUSION

Based on the foregoing, it is **ORDERED** that Anthem Defendants' Motion to Dismiss (ECF No. 43), BCBS Defendants' Motion to Dismiss (ECF No. 48), BCBS Tennessee's Motion to Dismiss

(ECF No. 53), and BCBS Kansas's Motion to Dismiss (ECF No. 106), should be and are hereby **GRANTED.**  Therefore, Plaintiffs' claims against Anthem Defendants, BCBS Defendants, BCBS Tennessee, and BCBS Kansas are **DISMISSED.**  It is further **ORDERED** that Plaintiffs shall have until **March 1, 2014**, to file an amended complaint.

It is further **ORDERED** that BCBS Alabama's Motion to Compel Arbitration (ECF No. 49), should be and is hereby **GRANTED.**  Therefore, Victory Medical Center Houston, L.P.'s claims against BCBS Alabama relating to SB's health benefit plan are hereby **DISMISSED.**

It is further **ORDERED** that Capital's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 52), should be and is hereby **GRANTED.**  Therefore, Plaintiffs' claims against Capital BlueCross are hereby **DISMISSED**.

SO ORDERED on this **3rd day** of **February, 2014**.


Reed O'Connor
UNITED STATES DISTRICT JUDGE